CITY OF BROWNSVILLE, Oklahoma Municipal Power Authority, and AEP Texas Central Company, Appellants,

v.

GOLDEN SPREAD ELECTRIC COOPERATIVE, INC.,
Appellee.

No. 05–05–01150–CV.

Court of Appeals of Texas,
Dallas.

May 17, 2006.

Rehearing Overruled June 20, 2006.

James P. Karen, Jones Day, Dallas, R. Gaines Griffin, Esq., Davidson & Trolilo, P.C., San Antonio, James R. Goza, City Attorney, Brownsville, P. Michael Jung, Strasburger & Price, L.L.P., Dallas, Eduardo Roberto Rodriguez, Rodriguez, Colvin, Chaney & Saenz, LLP, Brownsville, Samara L. Kline, J. Kemp Sawers, George C. Lamb, III, Baker & Botts, L.L.P., Dallas, for Appellant.

Lin Hughes, McGinnis, Lochridge & Kilgore, Austin, John W. Davidson, R. Gaines Griffin Davidson & Troilo, San Antonio, for Appellee.

Before Chief Justice THOMAS and Justices MORRIS and FITZGERALD.

## OPINION

Opinion by Justice MORRIS.

This is a summary judgment case. The dispositive issue we decide is whether one of the co-owners of an electrical generating facility effectively exercised its right of first refusal to purchase another co-owner's interest. In their appeal, the City of Brownsville and the Oklahoma Municipal Power Authority both contend they effectively exercised their respective rights to purchase the ownership interest of the other appellant AEP Texas Central Company. Golden Spread contends legal impediments exist that prevent either the City of Brownsville or the Oklahoma Municipal

Power Authority from purchasing AEP Texas Central Company's interest on the terms necessary to exercise their rights of first refusal. Golden Spread claims its contract to purchase the ownership interest from AEP Texas Central Company is the only purchase agreement among the parties enforceable as a matter of law. After reviewing the summary judgment record and applicable law, we conclude the City of Brownsville effectively exercised its right of first refusal. We therefore reject Golden Spread's argument. We reverse the trial court's judgment in favor of Golden Spread and render judgment that Golden Spread take nothing by its claims for declaratory judgment and specific performance.

## I.

The focus of this dispute is the sale of an ownership interest in the Oklaunion Unit No. 1 electrical generating facility. The Oklaunion facility is co-owned by several entities including the City of Brownsville, the Oklahoma Municipal Power Authority ("OMPA"), and AEP Texas Central Company ("TCC"). The sale of any ownership interest in the Oklaunion facility is controlled by a participation agreement.

Article XV of the participation agreement grants the co-owners a "right of first refusal." Under the terms of the agreement, a co-owner intending to sell its interest in the Oklaunion facility must serve on all other co-owners written notice of its intent to sell at least seven months before consummation of the intended transfer. The notice must include a copy of the written offer from the proposed buyer setting forth the consideration and other terms of the offer. The co-owners then have the option to acquire all or any undivided interest in the ownership interest to be transferred. The participation agreement states that the right of first refusal

"shall be exercised by the [co-owners] serving written notice of intention to exercise their option upon the Participant desiring to transfer and on the remaining [co-owners] within three (3) months after service of the written notice of intention to transfer given . . . ."

On January 30, 2004, TCC executed an agreement with Golden Spread Electrical Cooperative for the sale of TCC's 7.81% ownership interest in the Oklaunion facility. This agreement specifically stated that TCC's obligation to consummate the transaction was subject to the fulfillment of various conditions, including there being no effective exercise of the right of first refusal held by the facility's co-owners. Accordingly, if any one co-owner effectively exercised its right of first refusal, Golden Spread's contractual right to purchase TCC's interest would terminate. TCC sent the required notice of intention to transfer to the Oklaunion co-owners. Within the three-month exercise period, Brownsville sent notice to TCC and the other co-owners of its intent to exercise its option to purchase. OMPA also sent a notice of intent to exercise its option, but it is disputed whether a proper notice was sent by OMPA within the three-month exercise period.

Brownsville and TCC executed a contract under which Brownsville agreed to purchase TCC's ownership interest on essentially identical terms to those set forth in TCC's contract with Golden Spread. Golden Spread then filed this suit against TCC, Brownsville, and OMPA claiming that neither Brownsville nor OMPA had validly exercised its right of first refusal. Golden Spread sought a declaratory judgment that its purchase agreement with TCC was valid and enforceable and sought damages for alleged tortious interference with its contract.

All parties filed motions for summary judgment. Both Brownsville and TCC filed motions for summary judgment arguing that Brownsville had properly exercised its right of first refusal and, therefore, Golden Spread's claims failed as a matter of law. OMPA filed a similar motion for summary judgment arguing that it had properly exercised its right of first refusal or, in the alternative, Brownsville's exercise of its right of first refusal rendered Golden Spread's contract with TCC unenforceable.

Golden Spread filed three motions for summary judgment to support its claim that neither Brownsville nor OMPA had properly exercised its right of first refusal. Golden Spread's first motion for summary judgment was based on the assertion that neither Brownsville nor OMPA could exercise its right of first refusal without violating the laws of their respective states. Specifically, Golden Spread argued that to effectively exercise their right of first refusal both Brownsville and OMPA were required to accept all the terms and conditions set forth in the contract for sale between Golden Spread and TCC, including the agreement's indemnity provisions. According to Golden Spread, the indemnity provisions were a fatal impediment for both Brownsville and OMPA. It argued that neither Brownsville nor OMPA could legally assume the obligation to indemnify TCC and, therefore, any attempt by either party to exercise its right of first refusal was ineffective.[1]

The trial court granted Golden Spread's first motion for summary judgment and declared that Golden Spread was entitled to specific performance of its contract with TCC. The trial court denied Golden Spread's second and third motions for summary judgment and the motions for summary judgment filed by Brownsville, TCC, and OMPA.[2]

On appeal, Brownsville, OMPA, and TCC contend the trial court erred in granting Golden Spread's first motion for summary judgment because neither Brownsville nor OMPA was legally prohibited from indemnifying TCC. Brownsville further argues that, to the extent the indemnity provisions may be void or unenforceable, the provisions are not central to the agreement and the severability provision of the agreement renders the remainder of the contract enforceable and the exercise of its right of first refusal effective. For the reasons set forth below, we agree that Brownsville's exercise of its right of first refusal was effective. Accordingly, we conclude the trial court

1. Golden Spread also argued that OMPA's continued negotiations after the deadline to exercise its right of first refusal rendered its attempted exercise ineffective. Because of our disposition of the other issues in this appeal, it is unnecessary for us to address this argument.

2. The appellants' motions for summary judgment were directed solely at defeating Golden Spread's claims for declaratory judgment and specific performance. Golden Spread's claim for tortious interference against Brownsville and Brownsville's reciprocal claim for tortious interference against Golden Spread were dismissed with prejudice. The remaining claims, including Golden Spread's claims against OMPA for tortious interference and claims under § 9.012 of the Texas Civil Practice and Remedies Code, Golden Spread's claim against TCC for breach of contract, OMPA's claim against Golden Spread for tortious interference, OMPA's claims against TCC for breach of contract and specific performance, and Brownsville's claims against TCC for breach of contract and specific performance were severed into a separate cause and abated. The dispositive issue before this Court, therefore, is whether the trial court properly granted summary judgment in favor of Golden Spread on its claims for declaratory judgment and specific performance and denied appellants' motions consequently.

erred in granting Golden Spread's first motion for summary judgment and in denying the motions for summary judgment filed by Brownsville, OMPA, and TCC.

## II.

■ Generally, a right of first refusal or preemptive right to purchase requires the owner of the subject property to offer the property first to the holder of the right on the same terms and conditions offered by a third party.[3] *See Abraham Inv. Co. v. Payne Ranch, Inc.*, 968 S.W.2d 518, 524 (Tex.App.-Amarillo 1998, pet. denied); *Texas State Optical, Inc. v. Wiggins*, 882 S.W.2d 8,10 (Tex.App.-Houston [1st Dist.] 1994, no writ); *Holland v. Fleming*, 728 S.W.2d 820, 822 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Sanchez v. Dickinson*, 551 S.W.2d 481, 485 (Tex.Civ. App.-San Antonio 1977, no writ). When the property owner gives notice of his intent to sell, the right of first refusal matures or "ripens" into to an enforceable option. *See Abraham*, 968 S.W.2d at 524. The terms of the option are formed by the provisions granting the preferential right to purchase and the terms and conditions of the third-party offer presented to the rightholder. *Id.* Once the property owner has given the rightholder notice of his intent to sell on the terms contained in the third-party offer, the terms of the option cannot be changed for as long as the option is binding on the property owner. *Id.* at 525.

■ The rightholder's exercise of the option to purchase must be positive, unconditional, and unequivocal. *See Texas State Optical*, 882 S.W.2d at 10–11. The rightholder must accept all the terms of the offer or the offer will be considered rejected. *Id.* In the absence of an agreement otherwise, unequivocal acceptance of the terms of the offer is considered an exercise of the right to purchase. When the rightholder gives notice of his intent to accept the offer and exercise his option, a contract between the rightholder and the property owner is created. *Abraham*, 968 S.W.2d at 525.

■ In this case, it is undisputed that Brownsville unequivocally accepted all the terms and conditions set forth in Golden Spread's offer to purchase TCC's interest in the Oklaunion facility. Golden Spread argues, however, that Brownsville was prohibited by the Texas Constitution from accepting the indemnity provisions of the contract and that any purported acceptance of those provisions rendered the contract between TCC and Brownsville void. If the contract were void, Golden Spread contends Brownsville's exercise of its right of first refusal was not effective.

■ Both Brownsville and TCC strongly dispute that Brownsville's acceptance of the indemnity provisions at issue violates the Texas Constitution. Brownsville argues that if the provisions are violative, the severability clause of the purchase agreement operates to sever out those provisions while preserving the remainder of the contract. The severability provision in the agreement reads in part: "if any provision of this Agreement is held to be invalid, void (or voidable) or unenforceable un-

---

**3.** Brownsville argues that the Oklaunion participation agreement allowed the co-owners to exercise their right of first refusal by merely agreeing to the price offered by a third party. Such "price agreements" were recognized by the Fifth Circuit Court of Appeals in *West Texas Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554, 1564 (5th Cir.1990). While we do not disagree that a right of first refusal may be drafted in such a way as to grant the holder the right to exercise its option to purchase by merely agreeing to a specified price or a price offered by a third party, it is not necessary for us to decide whether the right of first refusal in this case was a "price agreement."

der applicable Law, such provision shall be ineffective only to the extent held to be invalid, void (or voidable) or unenforceable, without affecting the remainder of such provision or the remaining provisions of this Agreement." Such severability provisions may serve to preserve contracts so long as the invalidated portions of the contract do not constitute the main or essential purpose of the agreement. *Cf. Williams v. Williams,* 569 S.W.2d 867, 871 (Tex.1978); *John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 87 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

The indemnity provisions of the Oklaunion purchase contract are clearly tangential to the main purpose of the agreement, which is the transfer of the ownership interest. The inclusion of the severability provision in the agreement indicates the parties were willing to sever out such tangential matters to preserve the main agreement. Therefore, the possible invalidity of the indemnity provisions *does not* render the entire agreement between TCC and Brownsville void.

■ Golden Spread further argues that, even if the entire agreement is not void, the invalidity of the indemnity provision alone renders Brownsville's exercise of its right of first refusal ineffective because its inability to perform the indemnity provision necessarily makes Brownsville's acceptance of the offer qualified rather than unconditional. This logic would deprive Brownsville of the benefits of the severability provision, however, and would alter the terms and conditions of the contract as applied to Brownsville. Under the severability provision, TCC and Golden Spread agreed the purchase contract would continue to be valid and enforceable even if some provisions of the agreement were later held to be invalid. Accordingly, both parties took the risk that some provisions in the contract would be unenforcea-

ble. Once the terms and conditions of the agreement, including the severability provision, were conveyed to Brownsville, neither TCC nor Golden Spread could change the terms of the offer. *See Abraham,* 968 S.W.2d at 525. To conclude that Brownsville's exercise of its right of first refusal was ineffective because one of the tangential provisions of the contract may be invalid or unenforceable against the city would be tantamount to removing the severability clause from the agreement offered to Brownsville. This is not permissible. *See id.*

■ Golden Spread's argument is essentially that, to effectively exercise its right of first refusal, Brownsville must not only accept all the terms and conditions of Golden Spread's offer to purchase TCC's interest, but TCC's ability to enforce the contract against Brownsville must be identical to its ability to enforce the contract against Golden Spread. The law does not require equivalent enforceability, however. The law requires only unequivocal acceptance of the terms and conditions of the third-party offer for there to be a sufficient exercise of a right of first refusal. *See Hutcherson v. Cronin,* 426 S.W.2d 638, 641 (Tex.Civ.App.-Tyler 1968, no writ). In this case, Brownsville unequivocally and unconditionally accepted the terms and conditions of Golden Spread's offer to purchase. By doing so, Brownsville did everything in its power, and everything necessary, to effectively exercise its right of first refusal. Because one of the co-owners effectively exercised its right of first refusal, TCC's obligation to sell its ownership interest to Golden Spread terminated.

We conclude the trial court erred in granting Golden Spread's first motion for summary judgment. We further conclude the trial court erred in failing to grant the motions for summary judgment filed by Brownsville, OMPA, and TCC on the

ground that Brownsville effectively exercised its right of first refusal.

We reverse the trial court's judgment and render judgment that Golden Spread take nothing by its claims for declaratory judgment and specific performance.