NUMBER 13-07-240-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JAMES KENNETH COLLINS, Appellant,


v.



STACEY LEIGH COLLINS, Appellee.

 


On appeal from the 221st District Court 


of Montgomery County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Benavides, and Vela


Memorandum Opinion by Justice Yañez


 

 This appeal arises from a motion to enforce and clarify a divorce decree filed by
appellee, Stacey Leigh Collins. Appellant, James Kenneth Collins, contends the trial court
erroneously interpreted a provision in the divorce decree. We reverse the complained-of
portion of the trial court's clarification order and remand the cause for further proceedings
consistent with this opinion.

Factual & Procedural Background

 The trial court pronounced the divorce of James Kenneth Collins and Stacey Leigh
Collins on June 30, 2005. On November 22, 2005, the trial court signed their divorce
decree, which contained a property settlement agreement ("the agreement"). On January
19, 2007, Stacey filed a "First Amended Motion to Implement and Motion to Clarify,"
alleging that James had failed to comply with parts of the agreement and praying for relief
therefrom. James then filed a counter-claim for enforcement of the agreement. James
complained, in part, that Stacey had failed to comply with a right-of-first-refusal provision
("the refusal provision") that was applicable to the sale of "The Big Red Barn" ("the Barn"). 
The Barn is a commercial building jointly owned by James and Stacey under the terms of
the agreement. The refusal provision stated the following:

 . . . IT IS AGREED, ORDERED, and DECREED that if either party
wants to sell, that party can demand the sale of the property known as "The
Big Red Barn" and it has to be sold. There is a right of first refusal for the
other party to buy out their percentage. If the parties cannot agree upon the
sales price, then a commercial appraisal must be done and the amount
arrived at on the appraisal is the sales price.


 IT IS AGREED, ORDERED and DECREED that at the sale of "The
Big Red Barn" the net proceeds will be split 55% to STACEY LEIGH
COLLINS and 45% to JAMES KENNETH COLLINS. (1)


 James's counter-claim alleged the following facts: (1) Stacey entered into a contract
to sell the Barn to Greg Gordon for $385,000; (2) Stacey failed to notify James of her intent
to sell the Barn prior to entering into the contract for sale; (3) upon notifying James of her
intent to sell the Barn, Stacey gave James five days to exercise his right of first refusal to
purchase the Barn for $385,000 (Gordon's purchase price); (4) on February 12, 2007,
James exercised his first refusal right by giving Stacey's attorney written notice of his intent
to purchase the Barn for $282,500, rather than for $385,000; and (5) Stacey refused to sell
the Barn to James for $282,500. James arrived at the $282,500 purchase price from a
commercial appraisal made on the Barn in May 2006. The appraisal was the result of
Stacey applying for a bank loan, and the bank subsequently ordering a commercial
appraisal to be conducted on the Barn for underwriting purposes.

 James's counterclaim requested the trial court to find Stacey in contempt for her
failure to sell the Barn to James for $282,500, "subject to the proportionate payment by the
parties of their prorata share of the taxes, insurance, interest and the lien balance(s)
associated with the Big Red Barn." James's legal position was that his right of first refusal
matured into an option contract to purchase the Barn when Stacey arranged for the sale
of the Barn. Because there was disagreement over the $385,000 purchase price proffered
by Stacey, James had the right under the agreement to purchase the Barn for a
commercially appraised amount, which, James asserts, means the commercial appraisal
conducted on the Barn prior to Stacey's sale arrangement. The counter-claim further
requested the trial court to compel Stacey to sell her interest in the Barn to James at the
appraised amount of $282,500.

 The trial court entertained Stacey's and James's motions at a hearing held on
February 22, 2006. Testimony was received from Stacey, John, Gordon, and other
witnesses. At the hearing's conclusion, the trial court determined, among other things, that
James's interpretation of the agreement's refusal provision was inaccurate. The trial judge
vocalized her interpretation of the provision, stating:

 [T[he point of the agreement and the right of first refusal was to get a fair
market value for the property and to get an appraisal. There was an
assumption there that it would be an appraisal of the fair market value as of
the time that the right of first refusal was to be exercised. It is my
understanding that there is nothing that values the property any better than
what somebody will pay for the property. So, it's clear the property is worth
$385,000.


The trial court then relayed its interpretation through a written order, which stated:

EXERCISE 1ST RIGHT OF REFUSAL BY JAMES KENNETH COLLINS

 

 The Court finds that the intent of the parties concerning the
commercial appraisal of the relevant real property herein was for the purpose
of obtaining the highest Fair Market Value amount of money that the real
property would sell for. The Court finds that a contract for sale exists at this
time between a Greg Gordon and Stacey Leigh Collins at a sales price of
$385,000.00. However, James Kenneth Collins has a first right of refusal to
purchase the real property within a reasonable time for the same price
should he choose to do so.


 IT IS THEREFORE the Order of this Court that James Kenneth
Collins has 21 days to exercise his first right of refusal or loose [sic] his first
right of refusal to purchase this real property on or before March 15, 2007 at
5:00 p.m. Should James Kenneth Collins elect to purchase this real
property, the sale must be consummated, funded, and closed within 30 days
which is on or before April 16, 2007 at 5:00 p.m. All monies or things of
value generated from this sale is ORDERED to be held in escrow pending
it division by this Court. (2)


 On appeal, James argues that "the trial court erred when it ruled contrary to the
parties' unambiguous written contract as to the sales price of their jointly owned
commercial property." James thus "prays that this Court reverse the trial court's decision
as to the Big Red Barn's sales price, hold the sales price to be $282,500.00, [and] remand
back to the trial court."

Applicable Law

 We review the trial court's ruling on a motion for clarification of a divorce decree
under an abuse of discretion standard. (3) The trial court abuses its discretion when it (1)
acts unreasonably, arbitrarily, or without reference to any guiding rules or principles, or (2)
erroneously exercises its power by making a choice outside the range of choices permitted
the court by law. (4)

 Under section 9.006 of the Texas Family Code, "the court may render further orders
to enforce the division of property made in the decree of divorce . . . to assist in the
implementation of or to clarify the prior order." (5) The court may specify more precisely the
manner of effecting the property division previously made if the substantive division of
property is not altered or changed. (6) A trial court lacks the authority to change the property
division in a final divorce decree. (7) An order that alters the substantive division of property
in a final divorce decree is "beyond the power of the divorce court and is unenforceable." (8)

 We interpret divorce decrees to determine not what the trial court should have done
but, if possible, what the court actually did. (9) Agreed judgments are interpreted in
accordance with contract law. (10) We construe divorce decrees, like judgments, as a whole
to harmonize and give effect to the entire decree. (11) If, when read as a whole, the divorce
decree's terms are unambiguous, we must effectuate the order in light of the actual
language used. (12) On the other hand, if the divorce decree's terms are ambiguous, that is,
subject to more than one reasonable interpretation, we must review the record along with
the decree to aid in interpreting the judgment. (13) Whether a divorce decree is ambiguous
is a question of law subject to de novo review. (14) Where provisions in the decree appear
to conflict, they should be harmonized if possible to reflect the intentions of the parties. (15) 
Furthermore, no single provision taken alone will be given controlling effect; rather, all
provisions must be considered with reference to the whole instrument. (16)

Discussion

 "Generally, a right of first refusal . . . requires the owner of the subject property to
offer the property first to the holder of the right on the same terms and conditions offered
by a third party." (17) There are other requirements, however, that a right of first refusal can
impose on the owner of the subject property--such as requiring that owner to first offer the
property to the holder of the right at a market value set by an independent appraisal. (18) We
find that this latter requirement was imposed upon Stacey when James exercised his right
of first refusal.

 As previously stated, the agreement's refusal provision provides: "There is a right
of first refusal for the other party to buy out their percentage. If the parties cannot agree
upon the sales price, then a commercial appraisal must be done and the amount arrived
at on the appraisal is the sales price." This language is not ambiguous. It clearly permits
the holder of the right of first refusal to purchase the Barn at a purchase price set by a
commercial appraisal. The language neither explicitly nor implicitly requires the holder of
the right to purchase the Barn on the same terms offered by or to a bona fide purchaser.

 The trial court's clarification order reveals that the court wrongly focused on
deciphering James's and Stacey's intentions for constructing the refusal provision; the trial
court, however, should have first focused on whether the provision's language was
ambiguous or unambiguous. Had the trial court determined that the language was
ambiguous, the court could have then proceeded to assess the parties' intentions. The
fact that James provided parol evidence of the parties' intent did not absolve the trial court
of its responsibility to effectuate the refusal provision in light of the actual language used. 
Moreover, James's testimony cannot create a latent ambiguity, as Stacey argues. His
testimony does not create a latent ambiguity because it does not arise out of the
application of the agreement. (19)

 The Collins's divorce decree was agreed to by both parties and appealed by neither;
therefore, we must construe the decree and the property settlement agreement
incorporated therein as written. (20) When construing the language at issue as written, we
find that the trial court's clarification order impermissibly altered the substantive division of
property in the decree. We do not find, however, that James is entitled to rely on a
commercial appraisal of the Barn that was conducted prior to the maturation of his right of
first refusal. The refusal provision clearly stipulates that the holder of the right can buy the
Barn at a commercially appraised value that is formulated after a party demands the sale
of the Barn and a disagreement arises as to the Barn's sales price. If James thus wishes
to exercise his right of first refusal, the Barn must be commercially appraised again, and
the sales price of the Barn will be governed by the new appraisal.

Conclusion

 We sustain James's sole issue on appeal. Accordingly, we reverse the portion of
the trial court's order set out above in this opinion, and deny Stacey's request to assess
damages against James for filing a frivolous appeal. We remand the cause to the trial
court for further proceedings consistent with this opinion. (21)



 
 LINDA REYNA YAÑEZ,

 Justice





Memorandum Opinion delivered and filed this

the 12th day of March, 2009.

1. See generally City of Brownsville v. Golden Spread Elec. Coop., Inc., 192 S.W.3d 876, 880 (Tex.
App.-Dallas 2006, pet. denied) (discussing law applicable to a right of first refusal).


 Generally, a right of first refusal or preemptive right to purchase requires the owner
of the subject property to offer the property first to the holder of the right on the same terms
and conditions offered by a third party. When the property owner gives notice of his intent
to sell, the right of first refusal matures or "ripens" into to an enforceable option. The terms
of the option are formed by the provisions granting the preferential right to purchase and the
terms and conditions of the third-party offer presented to the rightholder. Once the property
owner has given the rightholder notice of his intent to sell on the terms contained in the
third-party offer, the terms of the option cannot be changed for as long as the option is
binding on the property owner.

 

 . . . When the rightholder gives notice of his intent to accept the offer and exercise
his option, a contract between the rightholder and the property owner is created.


Id.
2. See generally Tex. Fam. Code Ann. § 9.008 (Vernon 2006) (authorizing the trial court to "render a
clarifying order setting forth specific terms to enforce compliance with the original division of property").
3. In re Marriage of McDonald, 118 S.W.3d 829, 832 (Tex. App.-Texarkana 2003, pet. denied).
4. Id.
5. Tex. Fam. Code Ann. § 9.006(a) (Vernon 2006).
6. Id. § 9.006(b).
7. McGehee v. Epley, 661 S.W.2d 924, 926 (Tex. 1983).
8. Tex. Fam. Code Ann. § 9.007(b) (Vernon 2006).
9. Shanks v. Treadway, 110 S.W.3d 444, 447 (Tex. 2003).
10. McKnight v. Trogdon-McKnight, 132 S.W.3d 126, 130 (Tex. App.-Houston [14th Dist.] 2004, no
pet.).
11. Shanks, 110 S.W.3d at 447.
12. Id.
13. Id.
14. Id.; Wright v. Eckhardt, 32 S.W.3d 891, 894 (Tex. App.-Corpus Christi 2000, no pet.).
15. Ogden v. Dickinson State Bank, 662 S.W.2d 330, 332 (Tex. 1983) (op. on reh'g).
16. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).
17. City of Brownsville, 192 S.W.3d at 880.
18. See, e.g., 12 U.S.C. § 2219a (1988) (This statute requires an institution of the Farm Credit System
that acquires agricultural real estate as a result of a loan foreclosure to provide the previous owner a right of
first refusal. This is effected by requiring the institution to notify the previous owner of that owner's right to
purchase the property at its fair market value as established by an accredited appraiser or to offer to purchase
it at a lesser price.); Holland v. Hannan, 456 A.2d 807, 811 n.3 (D.C. 1983) (addressing a contract containing
right of first refusal, which gave the right's possessor the option of purchasing the subject property "for cash
at the appraised fair market value returned by the appraiser or appraisers"); Turner v. Shirk, 364 N.E.2d 622,
623 (Ill. App. Ct. 1977) (addressing a contract containing right of first refusal, which stated that the right's
possessor "shall be given opportunity to meet any bona fide offer from a third person or the opportunity to
purchase at the fair cash market value based on appraisal as determined by three appraisers whereby one
appraiser would be selected by First Party, one by Second Party and the two selected would select a third
appraiser").
19. See Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 282-83 (Tex. 1996) (per curiam). 
As the supreme court has explained, a latent ambiguity arises in the following type of situation: "If a contract
called for goods to be delivered to 'the green house on Pecan Street,' and there were in fact two green houses
on the street, it would be latently ambiguous." Id. at 283 (quoting Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,
907 S.W.2d 517, 520 n.4 (Tex. 1995) (per curiam)).


 We reject all of Stacey's remaining arguments, which would only be relevant if we had found the
refusal provision ambiguous.
20. See Shanks, 110 S.W.3d at 448.
21. On remand, the trial court may specify the manner by which the Barn's commercially appraised
value is acquired. See Tex. Fam. Code Ann. § 9.006. The trial court, for example, could (1) instruct the
parties on how the appraiser will be selected, (2) set the Barn's sales price at the average appraised value
of two or more appraisals, or (3) set the Barn's sales price at the second highest commercially appraised
value among three obtained appraisals.