**CITY OF BROWNSVILLE, Texas, Acting by and through its PUBLIC UTILITIES BOARD, Appellant,**

v.

**AEP TEXAS CENTRAL COMPANY, Appellee.**

No. 05–09–00808–CV.

Court of Appeals of Texas, Dallas.

July 15, 2011.

Rehearing Overruled Aug. 29, 2011.

---

Eric D. Pearson, Heygood, Orr, Reyes, Pearson and Bartolomei, Dallas, TX, for Appellant.

James P. Karen, Jones Day, Dallas, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and MURPHY.

## OPINION

Opinion By Justice MORRIS.

This is the second appeal in a continuing dispute arising out of the sale of an ownership interest in an electric power plant. We determine in this appeal the effect of a release agreement on claims that the City of Brownsville, Texas brought against AEP Texas Central Company. The trial court concluded the language of the release barred all of the City's claims and rendered a take-nothing summary judgment in favor of appellee AEP Texas Central Company. On appeal, the City generally argues that the trial court erred in deciding the release agreement precluded all of its claims. For the reasons that follow, we reverse the trial court's judgment in part. We remand the cause to the trial court for further proceedings only on the causes of action and claims we describe at the conclusion of this opinion. We will affirm the trial court's judgment in all other respects.

### I.

The City, AEP Texas Central Company, and Oklahoma Municipal Power Authority, along with others not relevant to this appeal, co-owned the Oklaunion Unit No. 1 power plant.[1] The construction, ownership, and operation of the power plant was controlled by the Oklaunion Participation Agreement executed in 1985. Among other things, the participation agreement granted co-owners a "right of first refusal" if another co-owner intended to sell its interest.

In 2004, TCC executed an agreement to sell its interest in the power plant to Golden Spread Electric Cooperative, Inc. The agreement specifically provided that the

---

1. Hereafter, we will refer to AEP Texas Central Company as TCC and Oklahoma Municipal Power Authority as OMPA.

sale was subject to the co-owners' right of first refusal. The City and OMPA both sent notice to TCC that they intended to exercise their option to purchase its interest. TCC, in response, required the City and OMPA to execute purchase and sale agreements identical to the one executed by Golden Spread "with only such changes as may be necessary to reflect the identity(ies) of the parties." The City and OMPA each executed a separate purchase and sale agreement with TCC on essentially identical terms as set forth in the Golden Spread agreement. In response, Golden Spread filed a lawsuit against TCC, the City, and OMPA claiming that neither the City nor OMPA had validly exercised its right of first refusal. Golden Spread sought a declaratory judgment that its purchase agreement with TCC was valid and enforceable and also sought damages for tortious interference with its contract. Among other things, the City and OMPA filed cross-claims against TCC for breach of contract and specific performance. The trial court granted Golden Spread summary judgment declaring it was entitled to specific performance of its contract with TCC. The trial court severed Golden Spread's remaining claims, as well as OMPA's and the City's cross-claims, and abated the cause to allow the City to appeal the trial court's summary judgment. In that appeal, this Court held that the City validly exercised its right of first refusal. *City of Brownsville v. Golden Spread Elec. Coop., Inc.*, 192 S.W.3d 876, 877 (Tex.App.-Dallas 2006, pet. denied). We reversed the trial court's judgment and rendered judgment that Golden Spread take nothing by its claims for declaratory judgment and specific performance. *Id.*

After the supreme court denied Golden Spread's petition for review in December 2006, the City negotiated a separate agreement with OMPA allowing the City to purchase TCC's entire interest in the power plant. In effect, OMPA agreed to assign its pending claims against TCC to the City and to terminate its purchase agreement with TCC. TCC closed the sale to the City on February 14, 2007. Two days before the closing, however, the parties executed a document entitled "Termination Agreement and Releases." In that agreement, dated February 12, 2007, the City and OMPA agreed to release TCC from liability under the Oklaunion Participation Agreement, and TCC agreed to terminate its purchase and sale agreement with OMPA effective upon the closing of the sale of its Oklaunion interest to the City.

On April 27, 2007, the City moved to lift the abatement that the trial court had placed on the claims severed from the original lawsuit, which request the trial court granted.[2] The City proceeded to file an amended pleading asserting twenty-one causes of action against TCC on its own behalf and as OMPA's assignee.[3] The City and TCC then filed various motions including several motions for summary judgment. Among other grounds, TCC moved for summary judgment based on the February 12 release, section 11.13 of the City's purchase and sale agreement with TCC, and the anti-assignment clause in OMPA's purchase and sale agreement

---

2. Golden Spread and OMPA were dismissed from the lawsuit. The trial court realigned the parties so that the City became the plaintiff and TCC became the sole defendant and counterclaimant.

3. On behalf of the City, the pleading asserted eleven claims against TCC numbered "First Cause of Action" through "Eleventh Cause of Action." The pleading also asserted ten claims on behalf of OMPA against TCC which are numbered "First Cause of action" through "Tenth Cause of Action."

with TCC.[4] It also moved for summary judgment on the City's claim that the February 12 release was unenforceable under the doctrines of unilateral and mutual mistake. The City cross-moved for a partial summary judgment seeking a declaration that its claims were not barred by section 11.13 of the purchase and sale agreements and that the February 12 release, if enforceable, was limited to only those claims arising under the participation agreement and inapplicable to claims arising under the entirely separate purchase and sale agreements.

The trial court denied the City's motions for partial summary judgment noting that the sole basis for its ruling was its determination that the City's claims, whether brought on the City's own behalf or on behalf of OMPA, were released pursuant to the provisions of the February 12 release agreement. The trial court granted TCC summary judgment but specifically denied TCC's request for summary judgment based on the anti-assignment provision. The trial court severed and abated TCC's counterclaims making its summary judgment rulings final and appealable. The City then filed this appeal.

## II.

The parties' present dispute is framed by several of the agreements described above. In particular, we address issues relating to the 1985 Oklaunion Participation Agreement, the City and TCC's separate purchase and sale agreement relating to the sale of TCC's interest in the power plant, OMPA and TCC's separate but similar purchase and sale agreement, and, also, the parties' February 12, 2007 "Termination Agreement and Releases," which contains the release provision that is central to the parties' dispute in this appeal.

The City initially complains the trial court erred in granting a take-nothing summary judgment on all of its claims because the February 12 release only applied to its claims based on obligations arising under the 1985 participation agreement and not to its other claims based on obligations arising under the separate and distinct purchase and sale agreements executed by TCC when it intended to sell its ownership interest in the power plant. TCC, on the other hand, contends that all of the City's claims arise under or in connection with the participation agreement and are thus barred by the February 12 release. Before analyzing the merits of these arguments, we first determine whether TCC moved for summary judgment based on the February 12 release against all of the City's claims.

In its motion for summary judgment under the heading "The Termination Agreement and Releases Preclude Brownsville's Claims Relating to the Participation Agreement," TCC asserted the February 12 release precluded the City's first five causes of action (on behalf of itself and, alternatively, on behalf of OMPA), as well as its eleventh cause of action.[5] TCC's motion did not specifically assert the February 12 release as a ground for summary judgment with respect to the City's claims for a resulting trust, conversion, theft, common law fraud or fraudulent inducement, and statutory fraud or

---

4. TCC also asserted additional grounds for summary judgment with respect to the City's breach of fiduciary duty, unjust enrichment, and trust claims.

5. These claims were as follows: breach of the Oklaunion participation agreement; breach of the City and OMPA's purchase and sale agreements, breach of fiduciary duty, unjust enrichment, constructive trust, and declaratory judgment.

the declaratory judgment action that the City filed as assignee of OMPA.[6] Nevertheless, TCC contends that it sought summary judgment based on the February 12 release on all of the City's claims in its summary judgment reply brief. TCC relies on (1) a statement in the *City's* partial motion for summary judgment that TCC "has asserted all of [the City's] claims have been released" under the February 12 release and (2) an exchange between the City's attorney and the trial judge at the summary judgment hearing on October 5, 2007 to demonstrate that the City understood TCC was moving for summary judgment on all of its claims based on the February 12 release.

■ It is axiomatic that a motion for summary judgment cannot be affirmed on grounds not presented in the written motion. *See* Tex.R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). A party may not rely on grounds presented solely in its brief or in arguments during the summary judgment hearing to support a summary judgment. *See id.* Because TCC's motion did not raise the February 12 release as a ground for summary judgment on the City's claims for resulting trust, conversion, theft, common law fraud or fraudulent inducement, and statutory fraud or the declaratory judgment action it filed as assignee of OMPA, the trial court's summary judgment on these claims based on the February 12 release was improper.

■ In reaching this conclusion, we necessarily reject TCC's contention that its supplemental motion for summary judg-

ment "reiterated" its assertion that all of the City's claims, including those relating to the purchase and sale agreements were barred by the February 12 release.[7] TCC filed this supplemental motion for summary judgment after the hearing on its original motion. Once the hearing date on a motion for summary judgment has passed, a party may file an amended pleading only if it secures a written order granting leave to file. Tex.R. Civ. P. 166a(c). We assume leave has been denied unless the record affirmatively reflects that the court granted leave. *See 9029 Gateway South Joint Venture v. Eller Media Co.*, 159 S.W.3d 183, 187 (Tex.App.-El Paso 2004, no pet.). Here, the record is silent with respect to whether the trial court granted leave or even considered TCC's supplemental summary judgment motion. We note that the trial court's order granting summary judgment does not mention the supplemental summary judgment motion among the motions it considered in connection with its final summary judgment ruling. Because TCC did not present the February 12 release as grounds for summary judgment on the City's claims we previously described, it was error for the trial court to grant summary judgment on those claims on this ground. *See* Tex.R. Civ. P. 166a(c); *McConnell*, 858 S.W.2d at 341.

### III.

■ We now turn to the claims on which TCC did move for summary judgment based on the February 12 release. We begin with the City's claims for breach of the participation agreement and breach

---

6. TCC did assert, however, that section 11.13 of the purchase and sale agreement barred claims related to the closing of the sale and argued all but the City's claim for declaratory judgment were based on failing to timely close the sale. TCC also asserted additional

grounds on several of the City's causes of action.

7. TCC maintains it filed the supplemental motion for summary judgment to address the City's amended pleading filed after the summary judgment hearing.

of the purchase and sale agreement. A release must be construed like all other contracts. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990). Our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). The language of the release is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *See DeWitt Cnty. Elec. Coop. v. Parks*, 1 S.W.3d 96, 101 (Tex.1999). To give effect to the parties' intent, a release will be construed in light of the facts and circumstances surrounding its execution. *See Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 221 (Tex.1991). Even if certain claims exist when the release is executed, claims not clearly within the subject matter of the release are not discharged. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991).

In section 4(b) of the February 12 release, the City released TCC from "(i) all liabilities and obligations of TCC under the Oklaunion Participation Agreement and (ii) without limiting the generality of the foregoing, all Claims arising under or in connection with, or based upon any liability or obligation of TCC under the Oklaunion Participation Agreement, whether in contract, tort, or any other legal theory, which [the City] ever had, now has or hereafter may have against [TCC]." [8] Thus, we must examine the City's pleadings to determine whether the claims in its first five causes of action (on behalf of itself and, alternatively, on behalf of OMPA), as well as its eleventh cause of action, "arise under or in connection with, or are based on any liability or obligation of TCC under the Oklaunion Participation Agreement."

We begin with the City's causes of action (on behalf of itself and OMPA) entitled "Breach of the Oklaunion Participation Agreement." These causes of action are based on TCC's alleged breaches of sections 15.01, 15.02, 15.07, and 15.08 of the participation agreement as well as its insistence that the City and OMPA release TCC from liability under the Oklaunion participation agreement.[9] These claims are clearly based upon a liability or obligation of TCC under the participation agreement. As such, they are barred by the February 12 release. In fact, the City does not argue on appeal that these claims are excluded from the February 12 release. Accordingly, we conclude the trial court did not err in granting summary judgment on these claims.

█ The City's pleadings, however, also contain causes of action (on behalf of itself and OMPA) based on alleged breaches of the purchase and sale agreements executed by OMPA and the City. Specifically, the City contends that TCC breached sections 6.1 and 10.1(e) of the purchase and sale agreements by failing to close the sale of its interest in a commercially reasonable manner and by December 31, 2004. TCC contends that these causes of action are barred by the February 12 release because they arise under, in connection with, or are based upon a liability or obligation of TCC under the participation agreement to sell its interest to the City after the City exercised its right of first refusal. By its argument, TCC contends that any claim relating to the sale of its Oklaunion interest to the City and OMPA falls squarely

---

8. Section 4(a) of the February 12 release contains virtually identical release language with respect to OMPA.

9. The City also contends TCC breached the participation agreement by entering into the purchase agreement with OMPA because OMPA did not timely exercise its right of first refusal under the participation agreement.

within the scope of the February 12 release because the participation agreement required TCC to sell its interest to the City and OMPA if they exercised their first refusal rights. It further argues that because the purchase and sale agreements and the sale of TCC's interest thereunder flow directly from TCC's obligations under the participation agreement, the City's claims based on breaches of the later purchase and sale agreements also fall squarely within the scope of the February 12 release. We are unpersuaded by TCC's reasoning.

The February 12 release does not specifically address TCC's liabilities and obligations under the purchase and sales agreements. And contrary to TCC's assertions, there is nothing in the record to indicate that execution of the separate purchase and sale agreements were required to implement the City's or OMPA's rights of first refusal under the participation agreement. Consequently, any obligations TCC agreed to undertake pursuant to these documents were separate and distinct from those contained in the participation agreement.

Our conclusion is supported by the facts and circumstances surrounding the execution of the February 12 release. It is undisputed that the February 12 release was executed pursuant to Schedule 1.1J entitled "Seller's Required Consents." This schedule first appeared in the purchase and sale agreement between Golden Spread and TCC and was also included in the purchase and sale agreements TCC executed with the City and OMPA as a result of TCC's requirement that the City and OMPA execute purchase and sale agreements identical to the one executed by Golden Spread "with only such changes as may be necessary to reflect the identity(ies) of the parties." This schedule required the following: "The Oklaunion Owners other than Seller, AEP Texas North Company (f/k/a West Texas Utilities Company) and Public Service Company of Oklahoma shall have released Seller from liability under the Oklaunion Participation Agreement pursuant to a written release or other instrument in form and substance reasonably satisfactory to Seller." Pursuant to this provision, Golden Spread was required to obtain from the City and OMPA a release of TCC from liability under the participation agreement to which the City, OMPA, and TCC were parties before the sale to Golden Spread could be finalized. The release contemplated under schedule 1.1J did not address or attempt to release TCC's liabilities and obligations under the separate purchase and sale agreement but rather made the sale contingent on obtaining a release from extra-contractual entities with respect to TCC's liabilities under the participation agreement. TCC's and the trial court's construction of the February 12 release ignores this distinction, while a construction of the release acknowledging the separate liabilities and obligations arising from each of these separate contracts is in harmony with the facts and circumstances surrounding the release's requirement and ultimately, its execution.

In reaching this conclusion, we necessarily reject TCC's contention that construing the February 12 release to bar only those claims relating to the participation agreement and not those under the purchase and sale agreements renders the second clause of the release meaningless. The first clause generally releases TCC from its liabilities and obligations under the participation agreement. The second clause, however, specifically releases TCC from all *claims* arising under, in connection with or based upon TCC's liabilities or obligations under the participation agreement. The release defines "Claims" in section 4(a) as "all actions or causes of action of any kind,

damages, claims, counterclaims, suits, indemnities, guarantees or demands whatsoever, liquidated or unliquidated, contingent or fixed, determined or undetermined, known or unknown, at law or in equity." Thus, while the first clause in the release generally addresses TCC's liabilities and obligations under the participation agreement itself, the second clause specifically addresses claims under, in connection with, or based on TCC's liabilities and obligations under the participation agreement. Given the plain meaning of the release language, it is not necessary to construe the second clause as barring claims based on the separate purchase and sale agreements for it to have meaning. We conclude the trial court erred in granting TCC summary judgment based on the February 12 release with respect to the City's causes of action alleging a breach of the City's and OMPA's purchase and sale agreements with TCC.

■ We now turn to the effect of the release on the City's claims for breach of fiduciary duty, unjust enrichment, and a constructive trust against TCC. Under each of these causes of action, the City claims there was a fiduciary relationship or special relationship of trust and confidence between it and TCC that arose from their status as co-owners and co-operators of the Oklaunion plant. The City then alleges numerous breaches of this fiduciary duty or special relationship.[10] In its summary judgment motion, TCC asserted that because its duty to and relationship with Oklaunion plant co-owners were governed by the participation agreement, these claims are also barred by the February 12 release.

In a single paragraph in their appellate brief, the City broadly asserts that the special relationship upon which these claims are based arose from the parties' status as co-owners of the Oklaunion plant and summarily denies these claims were based on any liability or obligation of TCC under the participation agreement. It is well settled that to present an issue to this Court, a party's brief must contain, among other things, a clear and concise argument for the contentions made with appropriate citations to authorities and the record. TEX.R.APP. P. 38.1(i). Bare assertions of error without argument or authority waive error on appeal. *See Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex.App.-Dallas 1995, writ denied). Here, the City does not include any legal authority, analysis, or discussion of the law of fiduciaries or how this relationship is created nor does it discuss the relevance or application of the law to the facts of this case. By failing to provide us with a sufficient argument to make its complaint with respect to these causes of action, the City has waived any error in connection with the trial court's ruling on these claims.

■ Finally, in its motion for summary judgment, TCC also asserted that the City's cause of action for declaratory judgment was barred by the February 12 release because the declaration sought directly dealt with the terms of the partic-

---

**10.** Under each of the these three causes of action, the City alleges TCC breached its duty by (1) refusing to close the sale in a commercially reasonable manner as required by the purchase and sale agreement, (2) refusing to proceed with due diligence to close the sale as required by the purchase and sale agreement, (3) refusing to close the sale unless the City and OMPA released TCC from liability, (4) refusing to terminate the OMPA purchase and sale agreement unless the City and OMPA released TCC from liability, (5) refusing to inform the City and OMPA whether OMPA's purchase and sale agreement was enforceable following resolution of the underlying lawsuit, and (6) failing to place into escrow the proceeds of TCC's interest so they could be paid to the ultimate purchaser.

ipation agreement.[11] Specifically, TCC contended that the declaration sought by the City was that OMPA did not timely or validly exercise its right of first refusal under the terms of the participation agreement. But the City's declaratory judgment action encompassed more than the issue of whether OMPA timely exercised its right of first refusal under the terms of the participation agreement. It also included issues related to the effect, meaning, and enforceability of certain provisions in the City's purchase and sale agreement with TCC as well as the construction and enforceability of the February 12 release. A declaratory judgment declares the rights and duties or the status of parties in a justiciable controversy. *See OHBA Corp. v. City of Carrollton*, 203 S.W.3d 1, 5 (Tex.App.-Dallas 2006, pet. denied). It is not an independent cause of action. *See Frasier v. Yanes*, 9 S.W.3d 422, 427 (Tex.App.-Austin 1999, no pet.). Consequently, to the extent the City seeks declaratory relief related to provisions in the City's purchase and sale agreement with TCC or the construction and enforceability of the February 12 release, the trial court erred in granting summary judgment on this cause of action.

## IV.

In several additional issues, the City generally asserts summary judgment was improper because there was summary judgment evidence raising fact issues on its claims of mutual mistake, unilateral mistake, lack of consideration, fraud, and fraudulent inducement. The City's arguments under these issues, however, are based on the presumption that the February 12 release releases claims other than those involving TCC's liability and obligations under the participation agreement. Having concluded that the February 12 release barred only the City's first cause of action for breach of the participation agreement and its requests for declaratory relief in connection with the participation agreement, we need not address these arguments.[12]

## V.

■ TCC has filed cross-points in the event we conclude the trial court's judgment cannot be affirmed on the basis of the February 12 release. Specifically, TCC requests that we affirm the trial court's judgment on the following grounds raised in its various summary judgment motions: (1) the City lacked standing to assert claims as OMPA's assignee; (2) the City's claims are barred by section 11.13 of the purchase and sale agreement; (3) the City's claims based on a special relationship between it and TCC fail because the participation agreement and purchase and sale agreement both disclaim the existence of such a relationship; and (4) the City's tort and unjust enrichment claims are barred by the economic loss rule. When properly preserved for review, a court of appeals should consider the summary judgment grounds that the trial court expressly ruled on that are necessary for disposition of the appeal and may consider grounds that the trial court did not rule on in the interest in judicial economy. *See*

11. The City's pleading also included a request for declaratory relief as the assignee of OMPA with respect to certain provisions of the participation agreement, OMPA's purchase and sale agreement with TCC, and the February 12 release. TCC did not specifically move for summary judgment on these claims based on the February 12 release.

12. As noted above, we make no determination as to whether the February 12 release barred the City's third, fourth, and fifth causes of action, having concluded these issues were waived by inadequate briefing.

*Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996).

The City contends that we should not consider TCC's cross-points because it did not file a notice of appeal and, thus, failed to preserve these issues for review. The City's argument is not well-taken. Only parties seeking to alter the trial court's judgment must file a notice of appeal. TEX.R.APP. P. 25.1(c). Here, TCC is satisfied with the relief granted by the trial court and is merely presenting additional grounds for affirming the trial court's summary judgment. In such circumstances, a notice of appeal is not required. *See Dean v. Lafayette Place (Section One) Council of Co–Owners, Inc.,* 999 S.W.2d 814, 818 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

Among the cross-points raised by TCC, the only ground the trial court expressly ruled on is the first. This point challenges the City's standing to assert causes of action on behalf of OMPA on the basis of an anti-assignment clause in the OMPA purchase and sale agreement. In its final summary judgment order, the trial court stated "TCC's argument based upon the anti-assignment provision set forth in section 11.5 of the OMPA [purchase and sale agreement with TCC] is hereby DE-NIED." Consistent with the holding of *Cates,* we will address the merits of this cross-point.

TCC's standing argument relies exclusively on the following provision in the OMPA purchase and sale agreement: "The rights under this Agreement shall not be assignable or transferable nor the duties delegable by either Party without the prior written consent of the other Party, which consent may be granted or withheld in such other Party's sole discretion." TCC argues because OMPA did not obtain its written consent to enter into the assignment agreement with the City, the assign-

ment of OMPA's causes of action against TCC involving the purchase and sale agreement is void. We do not agree.

Texas law distinguishes between a contracting party's ability to assign rights under a contract containing an anti-assignment clause and that same party's ability to assign causes of action arising from the breach of that contract. *See Pagosa Oil & Gas, L.L.C. v. Marrs and Smith P'ship,* 323 S.W.3d 203, 211–12 (Tex.App.-El Paso 2010, pet. denied). Absent specific circumstances not present here, causes of action in Texas are freely assignable. *Id.* at 212. In the agreement between OMPA and the City, OMPA agreed to "assign, transfer, and sell and convey unto [the City] any and all of its claims and causes of action against [TCC] . . . arising out of or related to the sale by [TCC] of its remaining interest in Oklaunion Unit No. 1 . . . ." We look to the plain wording of the anti-assignment clause to determine whether it prohibited OMPA from assigning its causes of action to the City. *See id.* The clause merely states the rights and duties under the agreement were not assignable without written consent of the other party. The provision does not indicate an intent to limit the parties' ability to assign causes of action arising from an alleged breach of the purchase and sale agreement. Because OMPA maintained its common law rights to assign its causes of action arising from the purchase and sale agreement, the City had standing to assert OMPA's causes of action by virtue of the assignment. *See id.* We resolve TCC's first cross-point against it.

The trial court did not rule on TCC's remaining cross-points. Although we may consider such cross-points in the interest of judicial economy, we are not required to do so. *See Cates,* 927 S.W.2d at 624. We conclude that our consideration of TCC's

remaining cross-points would not further the interest of judicial economy in this matter. *See Callaghan Ranch, Ltd. v. Killam,* 53 S.W.3d 1, 4 n. 1 (Tex.App.-San Antonio 2000, pet. denied). Thus, we decline to do so.

In conclusion, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings with respect to the City's causes of action on behalf of itself and OMPA alleging breaches of the City's and OMPA's purchase and sale agreements with TCC, the City's claims for a resulting trust, conversion, theft, common law fraud or fraudulent inducement, and statutory fraud on its own behalf and on behalf of OMPA. We also reverse the trial court's judgment and remand to the trial court the declaratory judgment claim asserted on OMPA's behalf and the City's claim for declaratory judgment to the extent it seeks declaratory relief related to provisions in the City's purchase and sale agreements with TCC or the construction and enforceability of the February 12 release. We affirm the trial court's judgment in all other respects.