

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00098-CV

ST. JOHN BACKHOE SERVICE                                    APPELLANT

V.

DONALD VIETH AND KEN ALAN                                    APPELLEES
SCOTT

----------

FROM THE 97TH DISTRICT COURT OF CLAY COUNTY
TRIAL COURT NO. 2013-0118C-CV

----------

## MEMORANDUM OPINION[1]

----------

In three issues, Appellant St. John Backhoe Service (SJBS) appeals from the trial court's orders granting the motions for summary judgment filed by appellees Donald Vieth and Ken Alan Scott. We reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

Scott hired Vieth to cut hay growing on property owned by Nicholas Oleson. While Vieth was cutting hay on the property on September 13, 2011, the field caught fire. The fire spread to property where a piece of farm equipment owned by SJBS was located and destroyed the equipment.

SJBS filed suit against Vieth, Scott, and Oleson, alleging that their negligence caused the fire and resulted in the total loss of its piece of farm equipment. SJBS mailed its original petition against Vieth, Scott, and Oleson to the trial court clerk for filing on September 11, 2013. On September 16, 2013, the clerk filed the petition and issued citations on Vieth and Scott.[2]

SJBS unsuccessfully attempted personal service on Vieth and Scott three times in October 2013. In December 2013, SJBS filed a motion for substituted service on Vieth, which the trial court granted on December 30, 2013. *See* Tex. R. Civ. P. 106(b). Vieth was served by substituted service on January 18, 2014. SJBS filed a motion for substituted service on Scott in January 2014. Scott was served by substituted service on February 8, 2014.

In their answers, Vieth and Scott both asserted the affirmative defense of limitations. They filed separate motions for traditional summary judgment on their limitations defenses, contending that they were entitled to summary judgment because SJBS filed its lawsuit after limitations expired and,

---

[2]SJBS nonsuited its case against Oleson in November 2014.

alternatively, because they were not served until several months after limitations expired.  Scott further moved for traditional summary judgment on the following grounds:  (1) he was not liable in his individual capacity, (2) he was not liable for Vieth's negligence because they were not in a partnership or joint venture, (3) he was not liable for Vieth's negligence because Vieth was an independent contractor over whose work Scott had no control, and (4) Scott did not take any action that may have caused the fire.  Scott also moved for no-evidence summary judgment, alleging that there was no evidence that (1) a partnership or joint venture existed between Scott and Vieth, (2) Scott exercised any control over the details of Vieth's cutting and baling work, (3) Scott was responsible for Vieth's actions in connection with the fire, (4) Scott should have foreseen that Vieth's cutting and baling work would have caused a fire, (5) SJBS filed suit within the two-year limitations period, (6) SJBS exercised due diligence at all times in effecting service on Scott, and (7) Scott performed any actions in his individual capacity.

The trial court granted Vieth's and Scott's motions.  SJBS has appealed.

## II.  STANDARD OF REVIEW

We review a summary judgment de novo.  *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.  *Mann Frankfort Stein & Lipp*

3

*Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

## III. LIMITATIONS

In its first and second issues, SJBS argues that the trial court erred by granting Vieth and Scott summary judgment on limitations grounds because its original petition was timely filed and because it used reasonable diligence in serving Vieth and Scott.

The statute of limitations on a negligence claim is two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2015); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999). Therefore, limitations on SJBS's negligence claims against Vieth and Scott expired on September 13, 2013. To bring suit within the limitations period, SJBS was required to file suit within the limitations period and to use diligence in having Vieth and Scott served with process. *See Gant v. DeLeon*, 786 S.W.2d 259, 260

4

(Tex. 1990); *see also Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007) (explaining that "a timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation"). If SJBS was diligent in serving Vieth and Scott after the expiration of the statute of limitations, then the date of service related back to the date SJBS's original petition was filed. *See Gant*, 786 S.W.2d at 260; *see also Proulx*, 235 S.W.3d at 215.

## A. Did SJBS file suit within the limitations period?

Both Vieth and Scott moved for summary judgment on the ground that SJBS did not file its petition before limitations expired. In the order granting Scott's motion, the trial court expressly found that "there is no genuine issue of material fact as to Defendant's affirmative defense of Statute of Limitations and Defendant is entitled to summary judgment thereon" and that "Defendant is entitled to summary judgment as a matter of law because the litigation was filed more than two years after the cause of action of negligence in this case accrued." However, the trial court struck identical findings in the order granting Vieth's motion.

Vieth concedes that the trial court granted him summary judgment "solely on the remaining issue of diligent service." But because the order granting Scott's motion includes an express finding that Scott was entitled to summary

judgment for the reason that SJBS's petition was filed outside the statute of limitations, we address whether summary judgment was proper on this ground.

Texas Rule of Civil Procedure 5 provides in pertinent part as follows:

> If any document is sent to the proper clerk by first-class United States mail in an envelope or wrapper properly addressed and stamped and is deposited in the mail on or before the last day for filing same, the same, if received by the clerk not more than ten days tardily, shall be filed by the clerk and be deemed filed in time. A legible postmark affixed by the United States Postal Service shall be prima facie evidence of the date of mailing.

Tex. R. Civ. P. 5. SJBS attached to its summary judgment response an affidavit executed by Laura Martinez, a custodian of records for the law firm representing SJBS. Attached to Martinez's affidavit were (1) a copy of a cover letter addressed to the trial court clerk and dated September 11, 2013, transmitting the original petition and filing fees and requesting the issuance of citation and (2) a copy of the envelope in which the cover letter and original petition were mailed. The envelope was postmarked by the United States Postal Service on September 11, 2013. Martinez averred in her affidavit that she was "the individual who signed the transmittal letter and sent it along with the above-referenced documents to the Clay County District Clerk on September 11, 2013" and that "[t]he petition was stamped five days later by the District Clerk's office."[3]

Viewing the evidence in a light most favorable to SJBS, Scott did not establish as a matter of law that SJBS failed to file its petition before limitations

---

[3]SJBS's original petition was file-marked September 16, 2013.

6

expired on September 13, 2013, because, under rule 5, SJBS's petition was deemed filed on September 11, 2013. Accordingly, the trial court erred to the extent that it granted summary judgment for Scott on this ground.

## B. Did SJBS use reasonable diligence in serving Vieth and Scott?

Vieth and Scott also moved for summary judgment on the ground that SJBS did not use reasonable diligence in serving them. They argued that because there were multiple periods of unexplained lapses between service efforts from when SJBS's original petition was filed on September 11, 2013, until they were served—Vieth on January 18, 2014, and Scott on February 8, 2014— SJBS failed to exercise diligence in serving them as a matter of law.

When a defendant has affirmatively pled the defense of limitations and establishes that service occurred after the limitations period expired, the burden shifts to the plaintiff to explain the delay. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009); *Proulx*, 235 S.W.3d at 216. The plaintiff must then present evidence to raise a fact issue as to due diligence in service of process. *Proulx*, 235 S.W.3d at 216. If the plaintiff's evidence raises a material fact issue regarding the diligence of service, the burden then shifts back to the defendant to conclusively show why, as a matter of law, the explanation is insufficient. *Id.*

To explain a delay in service, "it is the plaintiff's burden to present evidence regarding the efforts that were made to serve the defendant, and to explain every lapse in effort or period of delay." *Id.* (citing *Gant*, 786 S.W.2d at 260); *see also Zimmerman v. Massoni*, 32 S.W.3d 254, 256 (Tex. App.—Austin

7

2000, pet. denied) (stating that a plaintiff's attorney must evaluate continuously the state of efforts to secure service). "Generally, the question of the plaintiff's diligence in effecting service is one of fact, and is determined by examining the time it took to secure citation, service, or both, and the type of effort or lack of effort the plaintiff expended in procuring service." *Proulx*, 235 S.W.3d at 216. The "relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Id.* However, if "one or more lapses between service efforts are unexplained or patently unreasonable," then the record demonstrates lack of diligence as a matter of law. *Id.* "[W]hile the time period is important, it is not necessarily determinative of the question of diligence. Rather, we must consider the overall effort expended over the gap in service, and whether the search ceased to be reasonable, especially when other methods of service were available." *Ashley*, 293 S.W.3d at 181 (citing *Proulx*, 235 S.W.3d at 217; *Gant*, 786 S.W.2d at 260).

As explained above, limitations on SJBS's claim expired on September 13, 2013. Vieth and Scott met their initial summary judgment burdens by establishing that they were served with citation after limitations expired. *See* Tex. R. Civ. P. 166a(c). The burden then shifted to SJBS to explain its delay in serving Vieth and Scott and to present evidence to raise a fact issue as to its due diligence in effectuating service. *See Proulx*, 235 S.W.3d at 215–16.

The district clerk issued citations directed to Vieth and Scott on September 16, 2013, five days after SJBS filed its original petition by mail. Marcia McBride, a private process server, attempted to personally serve Vieth and Scott on October 8, 24, and 28, 2013. With respect to SJBS's attempted service on Vieth, McBride executed an affidavit on November 12, 2013, in which she stated that she attempted to serve Vieth at an address in Henrietta, Texas, believed to be his residence or business (the Henrietta address). On October 8, McBride knocked on the door, and Vieth's wife answered. She stated that he was out of town. McBride observed two cars in the driveway. McBride knocked on the door again on October 24, but no one answered. On October 28, Vieth's wife answered the door and stated that he was not home.

On December 5, 2013, SJBS's counsel's office mailed to the trial court clerk a motion for substituted service on Vieth supported by McBride's affidavit. The clerk filed the motion on December 30, 2013,[4] and the trial court signed an order granting the motion that day. The trial court found that "attempted service has not been successful, despite numerous and diligent attempts to serve Defendant" and ordered that Vieth could be served by leaving the citation and petition with any person over the age of sixteen at the Henrietta address or by attaching the citation and petition to the door at the Henrietta address. On

---

[4]There is no explanation in the record as to why twenty-five days elapsed between the mailing of the motion for substituted service and its filing by the trial court clerk.

9

January 18, 2014, McBride served Vieth by substituted service at the Henrietta address by leaving the citation and the original petition with Vieth's daughter.

With respect to SJBS's attempted service on Scott, McBride executed an affidavit on November 12, 2013, stating that on October 8, 24, and 28, 2013, she attempted personal service on Scott at an address in Bellevue, Texas, that was believed to be Scott's residence or business (the Bellevue address). With respect to each attempt, she noted, "Property Posted—PRIVATE PROPERTY. Unable to enter w/o trespass violation."

According to SJBS's summary judgment evidence,[5] SJBS's counsel's office contacted Robert Allen, another process sever, by email on January 2, 2014, and January 10, 2014, asking him to provide proof that Scott resided at the Bellevue address. In an affidavit executed on January 11, 2014, Allen stated that he personally searched the online tax database for Clay County and that the database listed Scott as the owner of the real property located at the Bellevue address. On January 15, 2014, SJBS's counsel's office mailed to the trial court clerk a motion for substituted service on Scott with McBride's and Allen's affidavits attached as support. The trial court signed an order granting the

---

[5]Exhibits E and F to SJBS's response to Scott's motion for summary judgment each contained a timeline of events related to SJBS's attempts to serve Scott. Exhibit E was a business records affidavit from Martinez with "a page containing copies of entries made in [the firm's] electronic database for [the firm's file related to this case]." Exhibit F was a document entitled "Documented Events: Service on Defendant Scott," which was list of dates and events related to service on Scott. The trial court overruled Scott's objections to Exhibits E and F, and he does not complain about these rulings on appeal.

motion on January 21, 2014. The trial court found that "attempted service has not been successful, despite numerous and diligent attempts to serve Defendant" and ordered that Scott could be served by leaving the citation and petition with any person over the age of sixteen at the Bellevue address or by attaching the citation and petition to the door at the Bellevue address.

SJBS received the order on January 23, 2014, forwarded it to Allen that day, and asked Allen to have Scott served "using" the order. SJBS contacted Allen again on February 6, 2014, asking whether Scott had been served yet. On February 8, 2014, McBride served Scott by substituted service at the Bellevue property by posting the citation and the original petition on the gate.

Both Vieth and Scott rely on *Proulx* to argue that SJBS did not use due diligence in serving them because the lapses between service efforts were unexplained and were patently unreasonable. *See* 235 S.W.3d at 216 ("[T]he plaintiff's explanation of its service efforts may demonstrate a lack of due diligence as a matter of law, as when one or more lapses between service efforts are unexplained or patently unreasonable.") In *Proulx*, the supreme court considered whether an almost nine-month delay between the time suit was filed and the defendant was served by substituted service demonstrated a lack of diligence as a matter of law. *Id.* at 215–16. Proulx filed a personal injury suit against Wells on May 2, 2003, and the process server received the citation on May 20, 2003. *Id.* at 214. Limitations expired on May 21, 2003, and from then until July 22, 2003, a process server attempted to serve Wells eleven times at

11

one address. *Id.* On July 31, 2003, the process server informed Proulx's attorney that he did not believe that Wells lived at that address. *Id.* An in-house investigator informed the process server that he located three alternative addresses for Wells. *Id.* at 214–15. Between August 5, 2003 and September 17, 2003, the process server made twelve attempts to serve Wells at those addresses. *Id.* at 215. A second process server made seven service attempts at two different addresses between October 17, 2003 and December 5, 2003, and made twenty phone calls to Wells's brother (who resided at the address listed on Wells's driver's license) between December 5, 2003, and December 10, 2003. *Id.* On December 5, 2003, a second private investigator Proulx hired to locate Wells concluded that he was moving from relative to relative to evade service and suggested substituted service. *Id.* Proulx filed a motion for substituted service on January 15, 2004, and service was effected by substituted service on Wells's brother on January 26, 2004, a little over eight months after limitations expired. *Id.*

> Despite these delays, the supreme court concluded

> that some periods of time elapsed between service efforts does not conclusively demonstrate that Proulx was not exercising diligence in his efforts to locate Wells. According to the summary-judgment evidence, Proulx utilized two process servers and two investigators in attempting to locate an address at which service could be effected. Over the course of the nine months that elapsed before substituted service was obtained, thirty service attempts were made at five different addresses. The difficulties that Proulx encountered in effecting service were attributed by a private investigator to the fact that Wells was "moving from relative to relative and doing his best to avoid service from the courts and creditors."

12

*Id.* at 217. The court went on to conclude that "[i]n light of the evidence that was presented regarding Proulx's continuous investigation and repeated service attempts, coupled with evidence that Wells was deliberately avoiding service, we conclude that Wells failed to conclusively establish lack of diligence." *Id.* Thus, the trial court erred by granting summary judgment for Wells. *See id.* at 215.

Vieth also relies on *Webster v. Thomas*, a case in which the court of appeals affirmed summary judgment on the grounds that the plaintiff failed to show due diligence as a matter of law. 5 S.W.3d 287, 289–90 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In *Webster*, five months elapsed between the filing of the petition and service on the defendant. *Id.* at 290. Webster filed suit in county court on May 8, 1997, the day limitations expired. *Id.* at 288. Three months later, on August 8, citation was issued. *Id.* On August 11, 1997, Webster's attorney sent the citation to the wrong precinct for service, and the constable returned the citation unserved on August 29, 1997. *Id.* Two weeks later, on September 15, 1997, the attorney mailed the citation to the correct precinct. *Id.* The constable made eighteen attempts to serve Thomas. *Id.* On October 8, 1997, the constable suggested filing a motion for substituted service, and the attorney began preparing the motion. *Id.* Before the motion could be filed, the constable served Thomas with citation on October 13. *Id.*

Webster's attorney stated in an affidavit supporting Webster's summary judgment response that he called the district clerk's office "several times [inquiring] when the citation would be issued." *Id.* at 290. The appellate court

13

noted that the affidavit reflected that the attorney had called the wrong clerk's office and did not reflect what the attorney said to the clerk, that there was an additional three week lapse of time because the attorney sent the citation to the wrong precinct, and that there was an unexplained two-week delay in sending the citation to the correct precinct. *Id.* at 290–91. The court concluded that these actions, which were taken over a period of four months and ten days "were not designed to procure the issuance of citation and service" and were not prudent. *Id.* at 291. Thus, the plaintiff did not exercise due diligence. *Id.*

Here, SJBS served Vieth approximately four months after it filed suit and served Scott approximately a month after it served Vieth. Although there were periods of time that elapsed between the issuance of citation and the first service attempts, between the three service attempts, between the last service attempt and the filing of the motions for substituted service, and between the granting of the motions for substituted service and substituted service, these lapses do not conclusively demonstrate that SJBS was not exercising due diligence in its efforts to serve Vieth and Scott. Four attempts were made to serve both Vieth and Scott, SJBS prepared and filed motions for substituted service, and SJBS served Vieth and Scott by substituted service. Most of these periods were made up of various short delays ranging from a few days to just over three weeks. Like the various two- and three-week delays in *Proulx*, the delays in this case do not conclusively establish that SJBS did not use due diligence in its efforts to serve Vieth and Scott. *See Proulx*, 235 S.W.3d at 216–17; *see also Fontenot v.*

14

*Gibson*, No. 01-12-00747-CV, 2013 WL 2146685, at *2 (Tex. App.—Houston [1st Dist.] May 16, 2013, no pet.) (mem. op.) (holding a two-week delay between the request for the first citation and the court's issuing the citation, followed by a two-week delay in delivering it to a process server; a three-week delay between the court clerk's issuing a second citation and Fontenot's sending the citation to a process server; and a three-week delay between the process server's receipt of the citation and the process server's first attempt at service did not demonstrate a lack of diligence).

The longest period of delay was the approximately two and half months between McBride's third service attempt on Scott, which occurred on October 28, 2013, and the filing of the motion for substituted service on Scott on January 15, 2014. During that time, McBride prepared an affidavit detailing her service attempts on Scott at the Bellevue address, and SJBS asked Allen to search appraisal district records to confirm that Scott lived at the Bellevue address and to execute an affidavit regarding his search. These efforts raise a fact issue regarding diligence. *See Fontenot*, 2013 WL 2146685, at *3 (concluding that evidence that plaintiff's attorney had requested that the process server investigate defendant's whereabouts, requested a forwarding address from the postal service, and searched various websites for defendant's address over a two-month period raised a fact issue); *Tate v. Beal*, 119 S.W.3d 378, 381 (Tex. App.—Fort Worth 2003, pet. denied) (holding facts raised issue on diligence when first citation was returned unserved and plaintiff searched for two and one-

15

half months before discovering defendant's address and requesting service again).

The delays between SJBS's efforts are not so "unexplained or patently unreasonable" that they demonstrate a lack of diligence as a matter of law. *See Proulx*, 235 S.W.3d at 216–17. We recognize that there was no evidence that either Vieth or Scott was attempting to evade service like the defendant in *Proulx*, but we conclude that this case more closely resembles *Proulx* than *Webster*. In *Webster*, the court held that there was no due diligence as a matter of law when the evidence showed that Webster's actions over a four month period were not designed to procure the issuance and service of citation. *See Webster*, 5 S.W.3d at 291. In this case, citation was issued immediately, not three months after suit was filed, and a process server was working to serve Vieth and Scott. Thus, viewing the summary judgment evidence in the light most favorable to SJBS, we conclude that SJBS's actions were designed to procure issuance and service of citation.

Finally, we note that the trial court expressly found in its orders granting the motions for substituted service that SJBS made "numerous and diligent attempts to serve" Vieth and Scott. This, combined with SJBS's evidence of its attempts to secure service, is sufficient to raise a fact issue regarding its due diligence. *See Elam v. Armstrong*, No. 03-07-00565-CV, 2008 WL 3539968, at *3–4 (Tex. App.—Austin Aug. 14, 2008, no pet.) (mem. op.) (holding that internet searches for defendant's address over approximately eight months between

16

second service attempt and filing of motion for service by publication were sufficient to raise a question of fact regarding diligence, particularly in light of the trial court's express finding in order granting motion for service by publication that plaintiff had exercised due diligence in attempting to serve defendant). Viewing the summary judgment evidence in the light most favorable to SJBS, we conclude that the evidence raised a genuine issue of material fact as to SJBS's diligence in effecting service on Vieth and Scott and that Vieth and Scott have not shown why, as a matter of law, SJBS's explanation is insufficient. *See Proulx*, 235 S.W.3d at 215.

Because Vieth and Scott each failed to conclusively establish his limitations affirmative defense as a matter of law,[6] we sustain SJBS's first and second issues.

## IV. SCOTT'S ADDITIONAL SUMMARY JUDGMENT GROUNDS

The trial court granted Scott summary judgment on his limitations affirmative defense, but as outlined above, Scott moved for summary judgment on several additional traditional and no-evidence grounds. The trial court did not

---

[6]Scott also moved for no-evidence summary judgment on limitations. He was not entitled to a no-evidence summary judgment on limitations because limitations is an affirmative defense on which he would have the burden of proof at trial. *See Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 830 n.8 (Tex. App.—Fort Worth 2008, no pet.); *see also* Tex. R. Civ. P. 166a(i) (providing that a party may move for no-evidence summary judgment on a claim or defense on which an adverse party would have the burden of proof at trial). Thus, the trial court erred to the extent that it granted Scott summary judgment on limitations on no-evidence grounds.

17

rule on these additional grounds. Scott has raised a cross-point arguing that summary judgment was proper because the summary judgment evidence established that Scott was not negligent as matter of law and because SJBS failed to produce more than a scintilla of probative evidence that raised a genuine issue of material fact as to Scott's negligence.

When reviewing a summary judgment granted on specific grounds, the summary judgment can only be affirmed if the ground on which the trial court granted relief is meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996). But if a party preserves the other grounds presented that were not ruled on by the trial court, a court of appeals may consider, in the interest of judicial economy, those other grounds that the trial court did not rule on. *Id.* at 626. To preserve the grounds, the party must raise them in the summary judgment proceeding and present them in an issue or cross-point on appeal. *Id.* at 625–26.

Although we may consider Scott's cross-point in the interest of judicial economy, we are not required to do so. *See id.* at 624; *City of Brownsville ex rel. Pub. Utils. Bd. v. AEP Tex. Cent. Co.*, 348 S.W.3d 348, 358 (Tex. App.—Dallas 2011, pet. denied). We conclude that our consideration of Scott's cross-point would not further the interest of judicial economy in this matter. *See City of Brownsville*, 348 S.W.3d at 358–59. Thus, we decline to consider Scott's cross-point.

## V.  CONCLUSION

Having sustained SJBS's first and second issues, we reverse the orders granting summary judgment for Vieth and Scott and remand the case for further proceedings consistent with this opinion.  *See* Tex. R. App. P. 43.2(d).

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MEIER, and SUDDERTH, JJ.

DELIVERED:  August 4, 2016