

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MR. W FIREWORKS, INC., | § | No. 08-22-00077-CV |
| Appellant, | § | Appeal from the |
| v. | § | 98th Judicial District Court |
| NRZ INVESTMENT GROUP, LLC, NELSON N. LEE, AND ALICE K. LEE, | § | of Travis County, Texas |
| | § | (TC# D-1-GN-21-001715) |
| Appellees. | § | |

## **O P I N I O N**

Appellant Mr. W Fireworks, Inc. (Mr. W) contends that the trial court erred in (1) granting summary judgment in favor of Appellee NRZ Investment Group, LLC (NRZ) on its request for specific performance of its contract with Appellees Nelson N. Lee and Alice K. Lee (together, the Lees) to purchase a 49-acre tract of land in Travis County; (2) finding that the right of first refusal (ROFR) Mr. W claims it had through a lease on the property was null and void; and (3) dismissing Mr. W's claims for breach of contract against the Lees and for tortious interference of contract against NRZ. We affirm the trial court's ruling on the merits of the parties' claims, but we strike the language in the judgment declaring all provisions in Mr. W's lease (other than the ROFR) null and void. As neither NRZ nor the Lees requested such broad relief, trial court lacked the authority

1

to include it.[1]

# I. FACTUAL BACKGROUND

## A. Mr. W's Leases and Its Purported Right of First Refusal

### 1. The 2012 lease

Appellant Nathan Lee originally entered into a two-year lease with Mr. W in March 2012, allowing Mr. W to lease a "100' by 100' area of frontage" located along the side of a specified road on a 49.243-acre tract of land (the 49-acre tract) in Travis County owned by the Lees. The stated purpose of the lease was to allow Mr. W to operate a seasonal fireworks stand on the subject property, and it gave Mr. W the exclusive right to sell fireworks on the subject property during the lease term, including any "option[]" period. The lease further provided that if Mr. W paid the Lees $1,350 on the 20th of every June and December, the lease would be considered "optioned" for that year. Finally, as regards the present case, the lease stated:

> Lessor[s] agree as an independent restriction that survives the lease not to sell or lease any part of said property including any adjoining or contiguous property to any person[s] or corporation for the purpose of selling fireworks in competition to Lessee during the term of this lease including all options, and for a period of ten years after lease is terminated. Lessor will give Lessee the first right of refusal should Lessor decide to sell."

Mr. W filed a "Memorandum of the Lease and Restrictive Covenants" (the Memorandum) in the county records on February 29, 2012, memorializing that it was leasing the property and that it had a ROFR to purchase the property.

### 2. The 2021 lease

Nelson Lee entered into a second lease agreement with Mr. W on January 13, 2021, which

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

Mr. W drafted, stating that the parties were "extending [the] current lease [for] six months and to continue with consecutive six month options from February 21, 2021." The lease again stated that it was for the purpose of allowing Mr. W to sell fireworks on the property and that Mr. W had the exclusive right to do so during the term of the lease and any option period. The lease called for Mr. W to make a $1,500 payment on the 24th of every June and December and provided that the lease would be "considered optioned" if the rent was paid on or before those dates. It further provided that either party had the right to cancel the lease with thirty days' notice. Unlike the first lease, the 2021 lease set forth a legal description of the leased property, which included the 49- acre tract. It also included the following language at issue in this appeal:

> "Lessor[s] agree as an independent restriction that survives the lease not to sell or lease any part of said property including any adjoining, adjacent or contiguous property to any person[s] or corporation for the purpose of selling fireworks in competition to the Lessee during the term of this lease including all options, and for a period of ten years after lease is terminated. Lessor will give Lessee first right of refusal should Lessor decide to sell. Only Mr. W fireworks are allowed to be sold on subject property."

Nelson Lee's wife, Appellant Alice Lee, was neither named in nor signed either lease.

**B.      The Lees' Sales Contract with NRZ**

On March 8, 2021, NRZ and the Lees entered into a contract in which the Lees agreed to sell NRZ the 49-acre tract for $1,690,000.00, with a closing date of April 15, 2021 (the NRZ contract). After the title company discovered the Memorandum Mr. W had filed reflecting its ROFR in the 2012 lease, Nelson Lee sent an email on March 23, 2021, to Mr. W's manager, Julio Martinez, stating:

> "I want to notify you that my property located at HWY 1431 which you lease is under sale contract. If you are interested in buying, please contact my agent Eve Cameron. I would like to terminate our contract as of June 30, 2021."

3

The same day, Martinez emailed Cameron requesting disclosure of the material terms of the NRZ contract. On March 26, 2021, Cameron sent Martinez a partially redacted copy of the NRZ Contract.

C.   **Mr. W's Purports to Exercise its Right of First Refusal**

By letter dated March 31, 2021, Mr. W's attorney advised the Lees that Mr. W was exercising its ROFR and intended to purchase the property on the same terms as the NRZ contract but demanded a later closing date to ensure that "Mr. W is provided the same periods of time [to close its contract] offered in the Contract to [NRZ] and so as not to frustrate Mr. W's exercise of the right of first refusal and subsequent closing." On April 6, 2021, the Lees executed a sales agreement with Mr. W to purchase the 49-acre tract for the same purchase price but gave Mr. W the requested 37 days to close, which pushed the closing date to May 13, 2021. The Lees then informed NRZ they were unable to comply with the NRZ contract due to Mr. W asserting its ROFR.

## II. PROCEDURAL BACKGROUND

A.   **The Parties' Claims and Counterclaims**

Naming both Mr. W and the Lees, NRZ filed a lawsuit on April 14, 2021, seeking a declaratory judgment that Mr. W's ROFR was void, or alternatively, that Mr. W did not properly exercise the ROFR, as Mr. W asked for different terms than what the NRZ contract called for—including a different closing date. NRZ sought specific performance of the NRZ contract and further sought damages from Mr. W based on its claim that Mr. W had tortiously interfered with the NRZ contract. In response, Mr. W brought a claim against the Lees for breach of contract for their alleged refusal to sell Mr. W the property and sought specific performance of its ROFR,

allowing it to purchase the property for the "same price and on the same terms and conditions" as the NRZ contract. Mr. W brought a counterclaim against NRZ, in the alternative, seeking damages for NRZ's alleged tortious interference with its ROFR.

In their answer to the pleadings, the Lees initially asked the trial court to deny both NRZ's and Mr. W's claims for specific performance, contending that neither party had tendered full consideration to purchase the Property.

## B. The Motions for Summary Judgment

On August 2, 2021, NRZ filed a traditional and no-evidence motion for partial summary judgment, seeking a declaration that the ROFR in Mr. W's lease was void under the statute of frauds, as neither the 2012 nor the 2021 lease adequately described the property that was subject to the ROFR.[2] In particular, NRZ argued that neither lease clearly identified what portion of the 49-acre tract Mr. W was leasing or what portion the ROFR covered, i.e., whether the ROFR only covered the frontage strip or whether it covered the entire 49-acre tract. In the alternative, NRZ argued that (1) the ROFR was void under the Texas Family Code, as both of Mr. W's leases were signed only by Nelson Lee, despite the alleged community-property nature of the property;[3] (2) the ROFR (assuming its validity) at most covered only the frontage strip that Mr. W had originally leased; and (3) Mr. W did not properly exercise the ROFR, as it demanded different terms than

---

[2] To satisfy the statute of frauds, a real estate contract "must furnish within itself, or by reference to some other existing writing, the means or data by which the [property] to be conveyed may be identified with reasonable certainty." *Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006) (quoting *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex.1972)) (internal quotation marks omitted). If a conveyance of an interest in real property violates the statute of frauds, it is unenforceable. *Id.*

[3] The Texas Family Code provides that, except for community property that "the spouse would have owned if single," community property is "subject to the joint management, control, and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement." TEX. FAM. CODE ANN. § 3.102(a)(c).

were contained in the NRZ contract, including a different closing date. In support of its arguments, NRZ attached a declaration from Nelson Lee, averring that the 49-acre tract was acquired by him and his wife during their marriage, that it was jointly titled in both of their names, and that he believed Mr. W's ROFR only covered the strip of land that Mr. was "using for its firework stand, not the entire 49.243-acre tract."[4] The Lees later filed their own motion for summary judgment, seeking dismissal of Mr. W's breach-of-contract claim against them, arguing that they did not breach the ROFR, as the ROFR did not provide any specific timeframe in which they were required to notify Mr. W of their contract with a third party. They further argued that they complied with the ROFR when they gave Mr. W the opportunity to purchase the property in accordance with the terms of the NRZ contract, but that Mr. W did not properly exercise that right when it demanded a different closing date. The Lees therefore asked the trial court to allow them to proceed with their sales contract with NRZ.

Mr. W opposed NRZ's no-evidence summary judgment motion, arguing that it was "premature," as only five months had passed from the time the lawsuit was filed, giving the parties inadequate time to conduct discovery prior to the filing of the motion. Mr. W also opposed NRZ's traditional summary judgment motion, as well as the Lee's motion, arguing that the 2021 lease agreement clearly specified that Mr. W was leasing the entire 49-acre tract, rather than just the roadside strip, and that the ROFR covered that entire tract. In support of its argument, Mr. W attached a declaration from its manager, Julio Martinez, expressing his belief that Mr. W had been

---

[4] Mr. W objected to Lee's affidavit, contending, among other things: (1) Lee's statement that the Property was jointly titled was incompetent to prove title and Lee was instead required to prove title through conveyance instruments; and (2) Lee's statement regarding the nature and extent of Mr. W's right of first refusal was an impermissible legal conclusion. The trial court overruled Mr. W's objections.

leasing the entire 49-acre tract since 1997.[5] Mr. W also argued that it properly exercised its ROFR, contending that its request for a different closing date was not a deviation from any material terms in the NRZ contract, as it was simply requesting the same amount of time (or less) to close the sale (thirty-seven days) as the Lees had given to NRZ (thirty-eight days); Mr. W further argued that it would have been unreasonable to give it only twenty days to close the sale, blaming the Lees for waiting over two weeks to provide it with information regarding the material terms of the NRZ contract after it was signed. [6] In addition, Mr. W argued that questions of fact remained regarding (1) whether the Lees had partially performed their contract by signing the sales agreement with Mr. W, thereby taking the matter out of the statute of frauds; (2) the 49-acre tract was community property; (3) Nelson Lee had the authority to enter into the lease agreements without his wife's signature; and (4) his wife, Alice Lee, later ratified the ROFR by signing the sales contract with Mr. W.

## C.    The Trial Court's Judgment

Following a hearing, the trial court issued an order granting NRZ's motion for partial summary judgment without providing the basis for its decision. NRZ then filed a second motion for a traditional and no-evidence summary judgment, seeking a final judgment that (1) it was entitled to specific performance of its sales agreement with the Lees and (2) Mr. W take nothing on its claim for tortious interference with its contract. In addition, NRZ sought an award of

---

[5] NRZ objected to Martinez's statement that the lease was for the entire 49-acre tract, contending that it constituted an impermissible legal conclusion. It does not appear that the trial court ever ruled on this objection.

[6] Mr. W also argued that it met the other requirements for exercising its option, including tendering checks to the Lees for the required earnest money deposit and option fees. Mr. W also submitted copies of the checks it had tendered to the Lees, demonstrating that the Lees accepted the checks.

attorney's fees and costs as the prevailing party.

The trial court thereafter entered its final judgment, ruling that "All claims or encumbrances of Mr. W to the Property, including, without limitation, the right of first refusal claimed by Mr. W, are DECLARED null and void." It granted NRZ's request for specific performance of its sales contract with the Lees. The court dismissed Mr. W's claims against both NRZ and the Lees; dismissed NRZ's claim against Mr. W for tortious interference with its contract with the Lees; and denied NRZ's request for an award of attorney's fees and costs. Mr. W appealed from the trial court's order, while NRZ and the Lees seek affirmation of the trial court's ruling in its entirety.

## III. ISSUES ON APPEAL

Although Mr. W lists seventeen issues in its brief, we distill its arguments into five separate categories:

1.      The first category is Mr. W's procedural argument that the trial court erred in granting summary judgment before adequate time for discovery had passed.

2.      The second category is Mr. W's argument that the trial court erred in dismissing its claim against the Lees for breach of contract.

3.      The third category is Mr. W's argument that the trial court erred in dismissing its claim against NRZ for tortious interference with a contract.

4.      The fourth category encompasses Mr. W's arguments relating to whether the trial court erred in granting NRZ's request for specific performance of its sales contract, and by the same token, whether the trial court erred in failing to find that Mr. W had a superior right to purchase the Property based on its ROFR. This category includes the following arguments: (1)

8

NRZ lacked standing to challenge the validity of the ROFR under either the statute of frauds or the Family Code as it was not a party to the ROFR; (2) even if NRZ had standing to challenge the ROFR, questions of fact remained regarding the ROFR's nature and enforceability; (3) the trial court was not entitled to consider Nelson Lee's affidavit in determining the nature and enforceability of the ROFR; and (4) questions of fact remained on the issue of whether Mr. W properly exercised the ROFR, or alternatively, whether it was excused from doing so due to the Lee's failure to notify it of the NRZ contract sooner. Subsumed in this category and the first two categories is the question of whether Mr. W met its burden in presenting sufficient evidence to support its claims and affirmative defenses to defeat the motions for summary judgment.

5.  The fifth and final category is Mr. W's argument that the trial court erred in declaring that all claims and encumbrances Mr. W had to the Property were null and void, as the parties did not request such broad relief.

Although we conclude that the trial court properly granted NRZ's request for specific performance of its sales contract and properly dismissed Mr. W's claims against NRZ and the Lees, we agree with Mr. W that the order was overly broad in granting relief not requested by the parties.

## IV. STANDARD OF REVIEW

We review an order granting summary judgment de novo. *See Houle v. Casillas*, 594 S.W.3d 524, 543 (Tex. App.—El Paso 2019, no pet.); *Border Demolition & Env't., Inc. v. Pineda*, 535 S.W.3d 140, 151 (Tex. App.—El Paso 2017, no pet.) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). "A party seeking to . . . obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting

9

affidavits for a summary judgment in his favor upon all or any part thereof." TEX. R. CIV. P. 166a(a). As well, a "party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." *Id*. at 166a(b).

In general, there are two types of motions for summary judgment, a no-evidence motion, and a traditional motion. When, as here, a party moves for summary judgment on both no-evidence and traditional grounds and the trial court does not indicate under which theory the motion was granted, we first address the no-evidence grounds. *See Houle*, 594 S.W.3d at 543 (citing *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017)). If we determine that the trial court properly granted the no-evidence summary judgment motion, we need not address the traditional motion to the extent that it addresses the same claims and issues. *Id.* (citing *Lightning Oil Co. v. Anadarko E & P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017)).

A movant filing a no-evidence motion for summary judgment must allege that (1) an adequate time to conduct discovery has elapsed and (2) the nonmovant has produced no evidence to support one or more essential elements of a claim or defense for which the nonmovant would bear the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *see also Houle*, 594 S.W.3d at 543 (citing *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015)). Once the movant satisfies its burden, the burden shifts to the nonmovant to produce more than a scintilla of evidence to raise a genuine issue of material fact as to each challenged element or defense. *Houle*, 594 S.W.3d at 543 (citing TEX. R. CIV. P. 166a(i); *Lightning Oil Co.*, 520 S.W.3d at 45; *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009)). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Id.* at 543-44 (citing *King Ranch, Inc. v.*

10

*Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). Although the nonmoving party is not required to marshal all of its proof in response to a summary judgment motion, it must present countervailing evidence that raises a genuine fact issue on the challenged elements. *Id*. at 544 (citing *Duchene v. Hernandez*, 535 S.W.3d 251, 258 (Tex. App.—El Paso 2017, no pet.)); *see also Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing Tex. R. Civ. P. 166a). The nonmovant fails to meet its burden of creating a fact issue when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Id*. (citing *Lozano v. Lozano*, 52 S.W.3d 141, 145 (Tex. 2001)); *see also Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021), reh'g denied (Sept. 24, 2021) (recognizing that "[c]onclusory evidence . . . is insufficient to meet the non-movant's burden under Rule 166a(i))."

A movant filing a traditional summary judgment bears the burden of proving that there is no genuine issue of material fact concerning at least one essential element of the challenged cause of action or defense, entitling it to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *see Houle*, 594 S.W.3d at 544 (citing *Lightning Oil Co.*, 520 S.W.3d at 45); *see also Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). The burden then shifts to the nonmovant to raise an issue of fact by producing more than a scintilla of evidence. *Houle*, 594 S.W.3d at 544 (citing *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014)). If the initial burden is not satisfied, the nonmovant does not need to respond or present evidence. *Id.* (citing *Amedisys, Inc.*, 437 S.W.3d at 511). Once again, in responding to the motion, the nonmoving party need not marshal all its proofs, but it must present evidence that raises a genuine fact issue on the challenged elements. *See Stierwalt v. FFE Transp. Services, Inc.*, 499 S.W.3d 181, 194 (Tex. App.—El Paso 2016, no pet.).

In reviewing the trial court's grant of either a traditional or no-evidence motion for summary judgment, an appellate court views the evidence in a light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We indulge every reasonable inference in favor of the nonmovant and resolve any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *Houle*, 594 S.W.3d at 544.

And finally, in the interest of justice, when a party raises multiple grounds in support of a motion for summary judgment, regardless of which ground the trial court found to be meritorious in granting the motion, we may affirm the trial court's order if any one of the movants theories presented to the trial court was meritorious. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *see also Gardner v. Abbott*, 414 S.W.3d 369, 380 (Tex. App.—Austin 2013, no pet.) (recognizing that in the interest of judicial economy, an appellate court may affirm a trial court's order granting a summary judgment on any ground that the movant preserved for review, even if the trial court did not rule on that ground).

## V. WHETHER THE SUMMARY JUDGMENT WAS PREMATURE

We start with the first category of issues and the procedural question of whether the trial court prematurely granted NRZ's motion for summary judgment without allowing adequate time for discovery to pass. Mr. W correctly points out that Texas Rule of Civil Procedure Rule 166a(i) provides that an "adequate time for discovery" must pass before a no-evidence summary judgment may be granted. TEX. R. CIV. P. 166a(i). While NRZ's motion sought both a no-evidence and

traditional summary judgment, even to the extent that we analyze the motion as a no-evidence one, we conclude that Mr. W failed to meet the requirements for challenging the trial court's ruling.

The Rules of Civil Procedure provide that when a party objects that it has not had an adequate opportunity for discovery before a summary judgment hearing, "it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Id*. (citing *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996)). In its affidavit or motion, the objecting party must show how the evidence sought by discovery is material to its claims, such that a continuance of the proceedings is necessary before the summary judgment motion is heard. *See Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex. App.—Houston [1st Dist.] 2001, no pet.). And a reviewing court will not consider any reason for a continuance that was not expressly presented to the trial court. *See D.R. Horton–Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 223 n.5 (Tex. App.—Fort Worth 2013, no pet.) (citing TEX. R. CIV. P. 251 and 252, and TEX. R. APP. P. 33.1(a)).

Here, Mr. W neither filed a verified affidavit nor a motion explaining why it believed additional discovery was necessary, what evidence it sought through discovery, and why such evidence would have been material to its case. (Nor does Mr. W provide any such explanation in its brief.) We therefore conclude that Mr. W failed to preserve its argument that additional time for discovery was necessary before the trial court could enter summary judgment in NRZ's favor. See *Mr. W Fireworks, Inc. v. 731 Properties, LLC*, No. 07-21-00029-CV, 2022 WL 1462400, at *2-3 (Tex. App.—Amarillo May 9, 2022, no pet.) (mem. op.), reh'g denied (June 22, 2022), reconsideration en banc denied (July 11, 2022) (finding that Mr. W did not preserve its claim that

additional time for discovery was needed prior to the entry of summary judgment where Mr. W failed to file an affidavit or a motion for continuance explaining the need for additional time).

Mr. W's Issue Fifteen is overruled.

# VI. MR. W'S BREACH OF CONTRACT CLAIM

We next consider Mr. W's second category of issues and its argument that a question of fact remained on the issue of whether the Lees breached their contract with Mr. W by allegedly refusing to honor the ROFR in the parties' lease agreement. As explained below, we conclude that no questions of fact remain on this issue.

## A.      Applicable Law: Rights of First Refusal

Because Mr. W contends that the Lees breached the ROFR in the lease agreement, we first review the law pertaining to such rights of first refusal. "A right of first refusal [ROFR], also known as a preemptive or preferential right, empowers its holder with a preferential right to purchase the subject property on the same terms offered by or to a bona fide purchaser." *Archer v. Tregellas*, 566 S.W.3d 281, 286–87 (Tex. 2018) (citing *Tenneco Inc.*, 925 S.W.2d at 644). Generally, an ROFR requires the grantor to notify the holder of its intent to sell and offer the property to the holder on the same terms and conditions offered by a third party prior to a sale. *Id*. at 287 (citing *Tenneco Inc.*, 925 S.W.2d at 644; *Navasota Res., L.P. v. First Source Tex., Inc.*, 249 S.W.3d 526, 532 (Tex. App.—Waco 2008, pet. denied)). Selling property subject to an ROFR to a third party without first offering it to the rightholder on the same terms can constitute a breach of contract. *Id* at 286–87 (citing *Riley v. Campeau Homes (Tex.), Inc.*, 808 S.W.2d 184, 188 (Tex. App.—Houston [14th Dist.] 1991, writ dism'd)).

When the grantor communicates the terms of a third party's offer to the holder, the ROFR "ripens into an enforceable option." *Id.* (citing *FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt., LLP*, 301 S.W.3d 787, 793 (Tex. App.—Fort Worth 2009, pet. denied)); *see also A.G.E., Inc. v. Buford,* 105 S.W.3d 667, 673 (Tex. App.—Austin 2003, pet. denied) (describing a right of first refusal as a dormant option). The terms of the option are formed by both the ROFR provisions and the terms and conditions of the third-party offer. *Id.* (citing *Abraham Inv. Co.*, 968 S.W.2d at 524– 25). The holder may then elect to purchase the property according to the terms of the option or decline to purchase and allow the owner to sell to the third party. *Id.* (citing *Jarvis v. Peltier*, 400 S.W.3d 644, 652 (Tex. App.—Tyler 2013, pet. denied)). "The exercise of an option like the acceptance of any other offer must be positive and unequivocal." *Austin Presbyterian Theological Seminary v. Moorman*, 391 S.W.2d 717, 720 (Tex. 1965); *see also Navasota Res., L.P.*, 249 S.W.3d at 533; *City of Brownsville v. Golden Spread Elec. Co-op., Inc.*, 192 S.W.3d 876, 880 (Tex. App.—Dallas 2006, pet. denied). This requirement is "often treated as identical with the requirement that an acceptance must not change, add to or qualify the terms of an offer." *Austin Presbyterian Theological Seminary*, 391 S.W.2d at 720; *see also Navasota Res., L.P.*, 249 S.W. 3d at 533 (as a general rule, acceptance must not change or qualify the offer terms); *Golden Spread Elec. Co-op., Inc.*, 192 S.W.3d at 880 (same). The owner of property subject to a ROFR "remains the master of the conditions under which he or she will relinquish interest in the property so long as those conditions are commercially reasonable, imposed in good faith, and not specifically designed to defeat the right," and therefore, the "rightholder does not have the privilege to negotiate with the seller regarding the terms of the third-party offer." *Hicks v. Castille*, 313 S.W.3d

15

874, 881 (Tex. App.—Amarillo 2010, pet. denied) (citing *Abraham Inv. Co.*, 968 S.W.2d at 525); *McMillan v. Dooley*, 144 S.W.3d 159, 176 (Tex. App.—Eastland 2004, pet. denied)).

Because an acceptance of an option contract is achieved only through strict compliance with its terms, any performance by less than strict compliance is generally considered to be a rejection of the option. *Crown Constr. Co. Inc. v. Huddleston*, 961 S.W.2d 552, 558 (Tex. App.— San Antonio 1997, no pet.) (citing *Jones v. Gibbs*, 130 S.W.2d 265, 271 (Tex. 1939)); *Navasota Res., L.P.*, 249 S.W.3d at 533 (a failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection). Accordingly, a right holder who proposes a new demand, condition, or modification of the terms is treated as having rejected the offer. *FWT, Inc.*, 301 S.W.3d at 794 (recognizing that with regard to an option, "a purported acceptance containing a new demand, proposal, condition or modification of the terms of the offer is not an acceptance but a rejection") (citing *Golden Spread Elec. Coop.*, 192 S.W.3d at 880; *Tex. State Optical, Inc. v. Wiggins* 882 S.W.2d 8, 11 (Tex. App.—Houston [1ˢᵗ Dist.] 1994). And in that instance, the owner may sell the formerly burdened property to anyone. *See Comeaux v. Suderman*, 93 S.W.3d 215, 220 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Riley,* 808 S.W.2d at 187).

**B.      Analysis: Mr. W Presented no Evidence that the Lees Breached the ROFR**

A claim for breach of contract requires pleading and proof that "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545

16

S.W.3d 479, 502, n. 21 (Tex. 2018)). Mr. W's ROFR-breach claim appears to center on its complaint that the Lees delayed almost two weeks before notifying it of the NRZ contract, which Mr. W repeatedly argues hindered its ability to accept the April 15 closing date in the NRZ contract. The ROFR, however, contains no express term requiring the Lees to notify Mr. W of a third-party sales contract within a certain timeframe. Instead, as set forth above, the ROFR simply provided that the "Lessor will give Lessee first right of refusal should Lessor decide to sell."

As our sister court has recognized, "[t]he details of a particular [preferential purchase] right depend upon the contract between the parties." *McMillan v. Dooley*, 144 S.W.3d 159, 175 (Tex. App.—Eastland 2004, pet. denied) (citing *W. Tex. Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554 (5th Cir. 1990). And as the terms of preferential rights vary widely, courts must scrutinize the parties' language to ascertain the scope of the right. *Id.* Here the ROFR, which Mr. W itself drafted, contained no language requiring the Lees to notify Mr. W within a certain time frame or to give Mr. W a certain amount of time in which to exercise its rights under the ROFR. And because Mr. W drafted the lease, both NRZ and the Lees point out that we must strictly construe the ROFR against Mr. W. [7] *See Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990) (recognizing the "well-established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is

---

[7] Mr. W does not deny that it drafted the lease; instead, it contends that we should disregard the argument that the lease should be construed against it as neither NRZ nor the Lees raised this "issue" as an "affirmative defense" in their pleadings. We do not, however, consider this to be a newly-raised issue, and instead view it, at most, as a new legal argument supporting the Lees' position that they did not breach their contract—an issue the Lees clearly raised in the trial court. An as the Texas Supreme Court has recognized, on "parties are free to construct new arguments" on appeal in support of "unwaived issues properly before the court." *State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 273 (Tex. 2017).

responsible for the language used"); *see also Perthuis v. Baylor Miraca Genetics Labs., LLC*, 645 S.W.3d 228, 241 (Tex. 2022) (to the extent that a contract provision was ambiguous, court should resolve the ambiguity against the drafter) (citing *Gonzalez*, 795 S.W.2d at 737) (requiring the construction of contractual ambiguity "against the party who drafted it since the drafter is responsible for the language used"). Had Mr. W wished to include language requiring the Lees to provide notice of their decision to sell within a certain timeframe, it could have done so; many ROFR agreements include terms to that effect. *See, e.g., Comeaux*, 93 S.W.3d at 217 (lessee's ROFR required lessor to notify lessee of the terms and conditions of any proposed sale to a third party at least ninety days prior to the date of closing of such proposed sale and gave lessee the option, for a period of thirty days after the receipt of said notice, to purchase the leased premises upon the same terms and conditions by tendering the full amount of the proposed purchase price to the lessor). Mr. W did not include any such parameters, and therefore, any ambiguity in terms of defining the parties' respective contractual obligations under the ROFR must be construed against Mr. W as the drafter and optionee. *See Durrett Dev., Inc. v. Gulf Coast Concrete, LLC*, No. 14-07-01062-CV, 2009 WL 2620506, at *5 (Tex. App.—Houston [14th Dist.] Aug. 27, 2009, no pet.) (mem. op.) (recognizing that because a purchase is option is largely for the benefit of the optionee, it will be construed against the optionee) (citing *Sinclair Ref. Co. v. Allbritton*, 218 S.W.2d 185, 188 (1949); *see also Primesorb, Inc. v. 95 Corp.*, No. 01-98-00987-CV, 2000 WL 351416, at *5, n. 6 (Tex. App.—Houston [1st Dist.] Apr. 6, 2000, no pet.) (recognizing same).

We must construe the ROFR as written, i.e., as simply requiring the Lees to offer Mr. W the right to purchase when the Lees decided to sell; we cannot add timing provisions to it. *See Cent. Tex. Water Supply Corp. v. Kempner Water Supply Corp.*, 645 S.W.3d 799, 808

(Tex. App.—El Paso 2022, pet. denied) ("Courts may not rewrite the parties' contract, nor should courts add to its language.") (quoting *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017)); *see also Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010) ("A contract's plain language controls, not 'what one side or the other alleges they intended to say but did not.'") Moreover, Mr. W does not argue that we may imply timing terms into the ROFR. Therefore, we do not consider that argument in our analysis. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) ("Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties."); *see also Dallas Cnty. v. Crestview Corners Car Wash*, 370 S.W.3d 25, 56–57 (Tex. App.—Dallas 2012, pet. denied) ("Except for rare instances of fundamental error . . . an appellate complaint, must be assigned as error on appeal) (citing TEX. R. APP. P. 38.1(f) ("The brief must state concisely *all issues or points presented* for review.") (emphasis added).

Because the record undisputedly reflects that the Lees offered Mr. W the opportunity to purchase the property as required by the ROFR, albeit just not as quickly as Mr. W would have liked, we conclude that Mr. W has failed to raise a question of fact on the issue of whether the Lees breached the ROFR. Therefore, the trial court did not err in granting summary judgment dismissing Mr. W's breach-of-contract claim.

Mr. W's Issue Thirteen is overruled.

## VII. MR. W'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM

In the third category of issues, Mr. W argues that questions of fact remain on its claim against NRZ for tortious interference with a contract. We conclude that Mr. W's claim has no legal basis, thus no questions of fact remain here.

The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *See Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997)). In evaluating a claim for tortious interference with a contract, a threshold question is whether the contract itself was "subject to the alleged interference." *ACS Inv'rs, Inc.*, 943 S.W.2d at 431 (citing *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660, 664 (Tex. 1990). Here, we conclude that Mr. W's ROFR was not subject to interference by NRZ.

Mr. W's ROFR simply gave Mr. W the right to purchase the subject property if the Lees decided to sell. It did not bar the Lees from entering into a sales contract with a third party prior to notifying Mr. W of its decision to sell. And it certainly did not bar NRZ from seeking to purchase the property. Therefore, NRZ and the Lees had a legal right to enter into a sales contract prior to such notification. Accordingly, because the ROFR was not subject to tortious interference by NRZ's lawful actions in entering into the sales contract with the Lees, Mr. W's tortious inference claim fails as a matter of law.[8] *See ACS Inv'rs, Inc.*, 943 S.W.2d 426, 431 (plaintiff's option

---

[8] We also note that NRZ had a legal right to have the court determine who was entitled to purchase the property once a conflict arose between the parties. *See generally Trinity River Auth. v. URS Consultants, Inc.-Tex.*, 889 S.W.2d 259, 261 (Tex. 1994) (recognizing an individual's "constitutional right of redress").

agreement was not subject to tortious interference where third party was permitted to enter into a sales contract before plaintiff was notified of its right to exercise its option to purchase); *see also Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017) (recognizing that "when the acts the plaintiff complains of as tortious interference are merely the defendant's exercise of its own contractual rights" a claim for tortious inference fails as a matter of law). Therefore, the trial court did not err in granting NRZ's motion for summary judgment dismissing Mr. W's claim for tortious interference with a contract.

Mr. W's Issue Fourteen is overruled.

## VIII. WHETHER MR. W FAILED TO PROPERLY EXERCISE ITS ROFR

In its fourth category of issues, Mr. W raises several challenges to NRZ's summary judgment motion arguments attacking the validity of the ROFR. We need not address those arguments, however, as we find the question of whether Mr. W properly exercised its ROFR— assuming its validity—to be dispositive of the question of whether Mr. W was entitled to purchase the property.

### A.     NRZ's Standing to Sue

As a preliminary matter, we recognize that NRZ had standing to raise the issue of whether Mr. W properly exercised its ROFR because its contract with the Lees was—at least impliedly— subject to Mr. W's ROFR. *See Abraham Inv. Co. v. Payne Ranch, Inc.*, 968 S.W.2d 518, 523–24 (Tex. App.—Amarillo 1998, pet. denied) (recognizing that third-party purchaser had standing to challenge whether optionee properly exercised its right of first refusal where its sales contract with the optionor was expressly subject to optionee's right). In other words, because the property was burdened by the ROFR, NRZ's right to purchase the property free of any such burden

was dependent on whether Mr. W properly exercised its ROFR. *Id.*; *see also McMillan v. Dooley*, 144 S.W.3d 159, 172 (Tex. App.—Eastland 2004, pet. denied) (recognizing that when property is sold in violation of an ROFR, the purchaser takes the property subject to the ROFR holder's rights) (citing *A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 673 (Tex. App.—Austin 2003, pet. denied). Moreover, since the Lees clearly had standing to challenge whether Mr. W properly exercised its ROFR and they clearly raised the issue in their motion for summary judgment, the issue is properly before the Court at this time.

**B.     Analysis: Mr. W Failed to Strictly Comply with the Terms of its Option Contract**

Assuming, as we do for purposes of this appeal, Mr. W had a valid ROFR to purchase the property, that right ripened into an option contract when the Lees entered into the NRZ contract, which dictated the terms of Mr. W's option contract. It was then incumbent upon Mr. W to exercise its option by agreeing to purchase the property on the same terms set forth in the NRZ contract. However, the record reflects that Mr. W expressly demanded a different closing date in the contract when it sought to exercise its option, seeking to extend that date by almost a month. As NRZ and the Lees argued, the closing date in a sales contract is a material term. *See Garrod Investments, Inc. v. Schlegel*, 139 S.W.3d 759, 764–65 (Tex. App.—Corpus Christi 2004, no pet.) ("The closing date of a contract for the sale of real estate is a material term.") (citing *Paxton v. Spencer*, 503 S.W.2d 637, 646 (Tex. App.—Corpus Christi 1973, no writ)); *see also Rolfe v. King*, No. 05-03-00357-CV, 2004 WL 784626, at *1 (Tex. App.—Dallas Mar. 29, 2004, no pet.) (mem. op.) (recognizing that a closing date is a material term in a sales contract).

On appeal, Mr. W does not dispute that the closing date was a material term in the NRZ contract, nor does Mr. W dispute that it sought a different closing date when it exercised its option.

Instead, Mr. W argues that a question of fact remained regarding whether it was excused from agreeing to the same closing date due to the Lees' delay in notifying it of the terms of the NRZ contract, which Mr. W argued hindered or precluded it from closing at the NRZ contract closing date. In support of its argument, Mr. W first cites a line of cases in which courts held that a seller's failure to comply with its obligations under an option contract excuses the optionee from complying with its obligations under the contract. *See, e.g., Broady v. Mitchell*, 572 S.W.2d 36, 40 (Tex. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) (excusing purchaser's failure to perform purchase agreement by closing date where seller did not make appropriate tender of his obligations). However, as explained above, Mr. W is unable to point to any express or implied contractual obligation the Lees violated under the terms of the ROFR by the delay in notifying it of the NRZ contract. Instead, the undisputed evidence establishes that the Lees did in fact offer Mr. W the opportunity to purchase the property on the same terms as set forth in the NRZ contract, as required by the ROFR. We therefore find this line of cases to be inapposite to Mr. W's situation.[9]

Mr. W next cites a second line of cases in which courts have held that an ROFR holder may be excused from accepting a commercially unreasonable term in an option contract if the term was placed in the contract in bad faith and with the intent to defeat the holder's rights. *Tex. State Optical, Inc.*, 882 S.W.2d at 9; *Shell*, 1998 WL 476728, at *2. There are two important distinctions between the facts in *TSO* and the present case. First, TSO conditionally exercised its ROFR subject

---

[9] Mr. W also cites *Jones v. Gibbs*, 130 S.W.2d 265, 272 (Comm'n App. 1939), which held that an optionee was excused from strictly complying with a term in its option, giving it the opportunity to receive an extension of time to remove timber from the subject property by making a required payment, where the optionee sent the payment to the wrong address due to ambiguities in the lease—which the optionor drafted. Mr. W does not explain how this case supports its position, as it has not pointed to any misleading language in the ROFR—which it drafted— regarding the parties' obligations under the ROFR.

to having a court determine whether the provisions in question were wrongfully imposed. *Id*. at 10. In contrast, Mr. W did not notify the Lees that it was making a conditional exercise of its rights under the ROFR subject to a court determination; instead, Mr. W demanded that the terms of its option contract be changed—a demand it was not entitled to make. Second, unlike TSO, Mr. W has not pointed to any bad faith on the part of the Lees or NRZ in placing an April 15th closing date in the NRZ contract. In particular, Mr. W did not present any evidence to support a finding that NRZ was anything other than a bona fide purchaser or that the Lees colluded with NRZ to place the April 15th closing date in the NRZ contract with the intent to defeat Mr. W's ROFR. Nor has Mr. W explained how the April 15th closing date could be considered commercially unreasonable. Instead, the focus of Mr. W's argument is not on the provision itself, but on the Lees' delay in notifying it of the NRZ contract. But as explained above, the delay was not a breach of the Lees' contractual obligations, and in any event, Mr. W still had twenty days to close the sale of the property prior to the closing date after the Lees provided Mr. W with a copy of the NRZ contract containing its material terms on March 26th. Significantly, aside from not including time requirements in the ROFR, Mr. W has not explained why he believes twenty days is a commercially unreasonable time in which to close a sale, nor has he cited to any legal authority for that proposition.

In the only other case Mr. W cites on this point, our sister court upheld a jury's finding that a landlord acted in bad faith and imposed commercially unreasonable terms in offering its tenant/optionee—who ran a music business—an option to lease additional space in the building in accordance with the tenant's ROFR but included sound restrictions that would have effectively prevented the tenant from conducting its business. *See Shell*, 1998 WL 476728, at *2. Like TSO,

the optionee in *Shell* conditionally accepted the offer subject to a court determination regarding whether it was excused from accepting the restrictions. *Id*. And in court, it produced evidence that the landlord had not included the same restrictions in the tenant's original lease or in its first series of offers to the tenant to lease additional space, thereby supporting an inference that the newly imposed restrictions were both commercially unreasonable and imposed in a bad faith attempt to defeat the tenant's ROFR. *Id*. at \*10.

Mr. W did not conditionally accept the opinion contract, nor did he point to any evidence to support an inference that the closing date was commercially unreasonably or prevented it from exercising its ROFR. Accordingly, we conclude that Mr. W did not raise a question of fact regarding whether it was excused from strictly complying with the terms of the NRZ contract in exercising its rights under the ROFR. The trial court's conclusion that Mr. W was not entitled to specific performance of its ROFR and that the Lees were therefore free to sell the subject property to NRZ was not in error.

Mr. W's Issue One is overruled.[10]

## IX. THE "NO COMPETITION" RESTRICTION IN THE LEASE

In its fifth and final category of issues, Mr. W contends that the trial court erred by including in its judgment: "All claims and encumbrances of Mr. W to the Property, including, without limitation, the right of first refusal claimed by Mr. W, are DECLARED null and void." In particular, Mr. W contends that this language granted NRZ and the Lees more relief than they requested, as both NRZ and the Lees only sought to invalidate the ROFR, not any other lease

---

[10] In light of our resolution of this issue, we need not address the remaining issues in Mr. W's brief regarding whether the ROFR was otherwise valid or enforceable, or whether the trial court erred in considering Nelson Lee's affidavit in declaring the ROFR void, as set forth in Issues Two through Twelve.

provisions. The lease contained a restriction prohibiting the Lees from selling or leasing the property to any of Mr. W's competitors for ten years after the lease terminated (the no-competition restriction). Mr. W contends that the trial court's judgment in effect ruled this provision null and void despite no request from the parties to do so. And as Mr. W points out, a trial court has no authority to grant relief not requested by the parties. *See Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex.1983) (citing TEX. R. CIV. P. 301 (the judgment of the court shall conform to the pleadings [and] the nature of the case proved)); *see also Timpte Industries, Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) ("It is well settled that a trial court cannot grant a summary judgment motion on grounds not presented in the motion."); *Armstrong v. Armstrong*, 570 S.W.3d 783, 789 (Tex. App.—El Paso 2018, pet. denied) ("A judgment must conform to the pleadings and proof, and a party may not be granted relief in the absence of pleadings to support it," unless the matter is tried by consent).

In responding to this argument, NRZ and the Lees contend that even if the ruling was overbroad, it was harmless because NRZ is not in the fireworks industry and Lees were therefore not precluded from selling the property to NRZ. As Mr. W points out, however, this argument overlooks the fact that the no-competition restriction in the lease also regarded leasing the property to a competitor. The lease further provided that this restriction survived the termination of the lease and all claims and encumbrances on the property "shall run with the land" and "be binding upon the assigns of the parties." *See generally Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 665 (Tex. App.—Austin 2005, no pet.) (recognizing that a restrictive covenant can bind a successor to the burdened land in two ways: as a covenant that runs with the land at law or as an equitable servitude.); *see also Inwood N. Homeowners' Ass'n, Inc. v. Harris*,

26

736 S.W.2d 632, 635 (Tex. 1987) (where property was conveyed in a succession of fee simple estates, the requirement of privity is satisfied, such that a covenant running with the land could be enforced against the purchaser of the property). Although we do not express any opinion on the no-competition restriction itself, we agree with Mr. W that the trial court's order effectively pronouncing the restriction null and void could be considered harmful to Mr. W's rights under the lease despite the lease's termination and despite the sale of the property to a noncompetitor such as NRZ.

NRZ and the Lees argue in the alternative that they did in fact seek a ruling that the entire lease be declared void under the statute of frauds and the Texas Family Code and that the trial court's ruling was thus within the purview of the relief requested. This argument fails for at least two reasons. First, in its petition, the only relief NRZ requested was a declaration that the ROFR was "void and/or unenforceable" and that it be granted specific performance of its sales contract with the Lees. Similarly, in its motion for partial summary judgment, the only relief it requested was a declaration that the ROFR was "void and/or enforceable." And in its second motion, while NRZ did ask for a declaration that it was "entitled to take the property free and clear of any claims or encumbrances by Mr. W," once again, the only "claim or encumbrance" that NRZ addressed in its motion was the ROFR provision in Mr. W's lease.

Second, as Mr. W points out, the Lees and Mr. W were the only parties to the lease, and while NRZ may have had standing to challenge the validity of the ROFR as it related to its right to purchase the property, as a stranger to the lease, it did not have standing to request that other provisions in the lease, let alone the entire lease, be declared null and void. *See generally MEI Camp Springs, LLC v. Clear Fork, Inc.*, 623 S.W.3d 83, 92 (Tex. App.—Eastland 2021, no pet.)

27

(recognizing that a stranger to a contract generally lacks standing to challenge the contract under the statute of frauds) (citing '*Moore' Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 938– 39 (Tex. 1972). And the Lees, who would have been in the position to request a declaration that all provisions in the lease be declared null and void, did not request any such relief. Instead, the Lees only addressed the same issues as NRZ did pertaining to the ROFR's validity and whether Mr. W properly exercised the ROFR. The only relief the Lees requested was specific performance on the NRZ contract and denial of Mr. W's breach of contract claim. Accordingly, we agree with Mr. W that the trial court exceeded its authority in granting relief not requested by the parties when it declared all of Mr. W's claims and encumbrances to the property null and void.[11] We therefore conclude that the challenged language must be stricken from the order.

Mr. W's Issue Seventeen is sustained.

## IX. CONCLUSION

We affirm the trial court's judgment in ordering specific performance of NRZ's sales contract and in dismissing Mr. W's claims against NRZ and the Lees. However, we strike the following sentence from the trial court's order: "All claims or encumbrances of Mr. W to the Property, including, without limitation, the right of first refusal claimed by Mr. W, are DECLARED null and void," and in its place, we substitute the following: "The right of first refusal claimed by Mr. W is DECLARED null and void."

---

[11] NRZ also argues that Mr. W failed to preserve this issue for review by not raising it in the trial court. We note, however, that because the grounds set forth in the parties' summary judgment motions were insufficient as a matter of law to support the trial court's overly broad ruling, a trial objection was not required. *See Philips v. McNease*, 467 S.W.3d 688, 694 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("a trial objection is not required if the grounds expressly set forth in the motion are insufficient as a matter of law to support the summary judgment.") (citing *Welch v. McDougal,* 876 S.W.2d 218, 226 (Tex. App.–Amarillo 1994, writ denied) (reversing a summary judgment because the movants did not address each of the nonmovant's claims, despite movants' appellate argument that the nonmovants had failed to preserve error)).

LISA J. SOTO, Justice

February 21, 2023

Before Rodriguez, C.J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)